492     KENTUCKY REPORTS.     [VOL. LXXXI.

Cin., N. O. & Texas Pacific R. R. Co., &c., v. The Commonwealth.

CASE 78—REVENUE CASES—December 18, 1883.

# Cincinnati, New Orleans & Texas Pacific R. R. Co. v. The Commonwealth.

# Chesapeake, Ohio & Southwestern R. R. Co. v. Same.

# Louisville & Nashville R. R. Co. v. Same.

### APPEAL FROM FRANKLIN CIRCUIT COURT.

1. The board of railroad commissioners are by the statute required to meet annually at the office of the auditor in Frankfort, on the 1st day of September in each year, for the purpose of equalizing the value of the property of railroad corporations.

2. The same rate of taxation for State purposes which is levied upon other real estate in this Commonwealth is to be levied upon railroad properties. &c., by the said board.

3. A railroad is a unit, and, as such, must be taxed.

4. The object of the legislature is that no injustice may be done to railroad companies by subjecting their property to fragmentary assessments, subject to the revision of the supervising boards of each county through which the roads may run.

5. Such imperfect and fragmentary assessments can not produce such uniformity as is absolutely necessary to produce equality. No wiser provision could have been made than to place the valuation in the hands of a board of intelligent men selected by the executive of the Commonwealth.

6. It is only a question of policy with the legislature whether the property of railroad corporations shall be assessed by commissioners, and it is with the law-making power to say whether such assessment shall or not be final.

7. The mode provided by the General Assembly for the assessment and taxation of railroads is not in conflict with the Federal constitution.

8. The mode of assessing and collecting taxes is not in the nature of a judicial proceeding. Revisory boards may be established and appeals allowed, but they are matters of expediency, and can not be demanded as a matter of constitutional right.

9. The board of commissioners can only assess. The power to enforce the collection of taxes so assessed is in the Franklin circuit court.

C. B. SIMRALL FOR CINCINNATI, NEW ORLEANS & TEXAS PACIFIC RAILWAY.

Cin., N. O. & Texas Pacific R. R. Co., &c., v. The Commonwealth.

HOLMES CUMMINS AND W. C. P. BRECKINRIDGE FOR CHESA-
PEAKE, OHIO & SOUTHWESTERN RAILWAY COMPANY.
WM. LINDSAY AND IRA JULIAN FOR LOUISVILLE & NASHVILLE R.
R. COMPANY.

The statute authorizing the assessment of taxes against roads makes a dis-
tinction between corporations and citizens of the Commonwealth.

In the case of railroad property a difference is made and the ordinary safe-
guards refused. The persons who contribute most largely to the devel-
opment of the State are at the mercy of a board of equalization.

The railroad property-holder has no right of notice, no right of hearing,
no right of offering evidence to show true value, nor any right of
appeal from unjust or erroneous valuation.

The act is in violation of the constitution of the United States as well as ·
the constitution of Kentucky.

(Const. U. S. Amendments, art. 5, art. 14; Const. Ky., art. 1, secs. 1, 2;
Bill of Rights, secs. 12, 2; Gen. Stats., pp. 710, 1016, 1019, 1020; Ib.,
ch. 92, art. 6, secs. 1, 3, 5; Ib., ch. 92, art. 5, secs. 6, 12, 13, 14, 15, 16;
Ib., ch. 92, art. 1, sec. 5; Pub. Acts, 1882, p. 66, p. 99; Cooley on
Taxation, pp. 265, 266, 267; Cooley Const. Lim., 3d ed., pp. 622-3-4,
479, 487-495, 499; Ib., 4th ed., pp. 437, 438, 111, 112; Rep. of R. R.
Com'rs, Ky., 1881, p. 129; 8 Eng. & Am. Ry. cases, p. 1; 74 N. Y.,
183; Lexington v. McQuillan's heirs, 9 Dana, 516; Louisville v. Hy-
att, 2 B. Mon., 177; Howell v. Bristol, 8 Bush, 493; Marshall v. Dono-
van, 10 Bush, 691; Preston v. Roberts, 12 Bush, 570; 3 O. S., 15; 43.
Ill., 428; 50 Ill., 424; 13 Cal., 325; 8 Kan., 558; 3 Neb., 30; 8 Kan.,
284; 96 U. S., 97; 49 Pa. St., 440; 26 Pa. St., 235; 26 Mich., 22; 108.
Eng. C. L., 180; 3 Adol & Ellis, 448; 8 Modern R., 163; Copeland v.
Copeland, 7 Bush, 350; Price v. Price's heirs, 6 Dana, 107; City of
Louisville v. Commonwealth, 1 Duv., 295; L. & N. R. R. Co. v. Com-
monwealth, 1 Bush, 250; 8 Mich., 301; 69 Pa. St. R., 362; 6 Barb,
214; Evansville, Henderson & Nashville R. R. v. Commonwealth, 9
Bush, 438; Broadway Baptist Church et al. v. McAtee et al., 8 Bush,
508; 4 R. I., 324; 6 Coldwell, 233; Burkett v. McCarty, 10 Bush, 758;
Pennington v. Woolfolk, 79 Ky., p. 16; 6 Kan., 500; 10 Cal., 402;
Gen. Stats., 1020; 36 Ib., 194; 3 Col., 428; 4 Dill, 35; 10 Cal., 589;
52 Wis., 628; 4 Nev., 217; 80 Iowa, 676; Cooley on Tax, 297; Bill
of Rights, sec. 12; Const. U. S. Amendments, arts. 5, 14.)

P. W. HARDIN, ATTORNEY GENERAL, AND A. DUVALL, FOR AP-
PELLEE.

As the power of taxation is inherent in the government, the right of the
law-making power to regulate the methods and modes of taxation
has been fully recognized.

Due "process of law" has never been construed to apply to administrative·
processes.

These summary proceedings for the collection of revenue have existed since·
the formation of the government, State and National.

Cin., N. O. & Texas Pacific R. R. Co., &c., v. The Commonwealth.

The right of appeal has never been held to be essential to the constitutionality of any act for the collection of State revenue. (Hilliard on
Taxation, 3; 18 Howard, 276; McMillan v. Anderson, 95 U. S. Rep.,
96; *Ib.*, 104; *Ib.*, 78; 22 Cal., 370; 1 McChord, 55; 2 Otto, 613; 9
Mo. App. Rep., 458; 20 Wall, 655; 30 Mich., 211; 48 Miss., 17; 43
Cooley on Tax., 39; L., C. & L. R. R. v. Commonwealth, 7 Bush, 255;
9 Dana, 516; 2 B. Mon., 177; 3 Bush, 493; 10 *Ib.*, 681; 12 *Ib.*, 570;
32 Mich., 415; 4 Peters, 563; 11 Wall, 429; 15 *Ib.*, 319.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The Cincinnati, New Orleans & Texas Pacific, the Chesapeake, Ohio & Southwestern, and the Louisville & Nashville railway companies, are in this court as appellants, complaining of a judgment rendered by the Franklin circuit court
against them, in favor of the State, for taxes alleged to be
due and unpaid for the year 1882.   The proceeding is by an
ordinary action, authorized by the provisions of the act of
April, 1878, entitled "An act to prescribe the mode of
ascertaining the value of the property of railroad companies
for taxation, and for taxing the same."

The appellants, in their answer below, insist that the mode
of assessment or valuation of railroad property for taxation,
as prescribed by the State, is in direct conflict with the constitution of the United States and the constitution of this
State, and therefore the proceedings below should have been
dismissed.

In order to a correct understanding of the issue made between the State and the appellants, it is proper to notice the
several legislative enactments under which the taxation in
this case was imposed, and to review briefly the past legislation of the State with reference to the manner of assessing the property of such corporations.

By the provisions of the first section of the act of April
3d, 1878, the president, or chief officer of each railroad
company, is required, in the month of July in each year,

to return to the auditor of public accounts, under oath, the total length of such railroad, &c., with the average value per mile thereof, for the purpose of being operated as a carrier of freight and passengers, including engines, cars, and a list of the depot grounds and improvements, and other real estate of the company, and the value thereof. By the third section, ''The governor is required to appoint three disinterested freeholders, citizens of the State, who shall constitute a board of equalization, who shall meet annually at the office of the auditor, in Frankfort, on the first day of September in each year, a majority present constituting a quorum for the transaction of business, and at said meetings the auditor shall lay before them the returns made to him under this act, &c.; *and should the valuations, or any of them, in the judgment of said board, be either too large or too low,· they shall correct and equalize the same by a proper increasè or decrease thereof.''* It is further provided that their service shall not be for a longer period of time than twenty days in any one year. By section 4, ''The same rate of taxation for State purposes which is, or may be, in any year levied on other real estate in the Commonwealth, shall be, and is ·hereby, levied upon the value so found by the said board, of the railroad, rolling stock, and real estate of each company.'' When the valuations are completed, notice is given by the auditor to each railroad company *of the amount of its assessment for taxation for State purposes*, &c., and the taxes are required to be paid on or before the 10th day of October in each year; and, upon default made, the taxes, in behalf of the Commonwealth, may be recovered by action in the Franklin circuit court.

The act of April 3d, 1878, was amended by an act approved April 19th, 1882, by which the board of railroad

commissioners, appointed under the provisions of an act approved April 6th, 1882, were required "to perform all the powers and duties conferred upon the board of equalization by the act to which this is an amendment." This last enactment substituted the railroad commissioners as the board, in room of three freeholders to be appointed by the governor, whose duty it was, by the act of April 3d, 1878, when the valuations placed on railroad property were too high or too low, to correct and equalize the same by a proper increase or decrease thereof.

The act creating the board of railroad commissioners is entitled "An act to prevent extortion and discrimination in the transportation of freight and passengers by railroad corporations," and in aid of that purpose to establish a board of railroad commissioners, and define its powers and duties. The purpose of that act seems to have been to invest the board with a supervisory power over railroad companies, so as to regulate and prevent improper charges for carrying freight and passengers, and to subject such companies, upon information made, to certain penalties when guilty of violation. The provisions of the 19th section of the act would conduce to the conclusion that the legislature intended to confer upon this board judicial power in authorizing them to hear complaints, and render judgments in cases where railroad companies have violated the provisions of the first and second sections of the enactment, but a careful consideration of the act will show an intention to give to the circuit court exclusive jurisdiction to enforce the fines and penalties imposed, and no other jurisdiction is conferred.

The award of the board of commissioners, if such power is given by the 19th section, is but the basis of a final action to be instituted in a tribunal having jurisdiction of the sub-

ject matter. The commissioners, under the act in question, constitute a mere advisory board, without *any power* except to receive reports from railroad companies in the manner prescribed by the act, and to hear complaints and give information when, in their opinion, the railroad companies, or any of them, have violated the law. They may suggest the mischief, but are powerless to afford a remedy, except by information to some other tribunal. If the power to render an award should exist, we perceive no reason why, under the enactment, they could not assess the property of the corporations, and exercise such ministerial duties as is required of them by the act of April 3d, 1878, and its amendments, and the act of April 6th, 1882. The act of valuation is in its character judicial, but the general duties of this board are purely ministerial, and for the exercise of such duties the board was organized, and, while the law creating it is in many respects imperfect, the court may disregard the 19th section of the act of April 6th, 1882, leaving the board to discharge all the other duties imposed by the act, and thus obviate the objection made by counsel that the act of April 6th, 1882, is in violation of section 2 of article 1 of the State constitution, providing that "no person, or collection of persons, belonging to one of these departments (legislative, executive, and judicial) shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly permitted."

The appellants in this case, in the year 1882, made returns to the auditor, as required by the provisions of the act of April 7th, 1878, stating under oath what they regarded as a fair valuation of their roads for the purposes of taxation. The board of commissioners, as is alleged, increased this valuation, and for that reason appellants declined to pay the

tax imposed, and for these taxes the judgment below was obtained.    Two of the appellants paid to the auditor the amount of taxes due upon the valuation as fixed by the chief officer of each corporation, but the Cincinnati, New Orleans & Texas Pacific Railway Co. declined to make any payment, in order, as they now state, that it might be heard upon the constitutional questions involved.

It is alleged in the petition by the State that the appellants were present and heard by the board of commissioners upon the question of valuation.   Nor do we understand that appellants are complaining so much of the valuation placed upon their respective roads as of what they designate the arbitrary power conferred upon the board by the act in question.    They maintain that, under the enactment, the hearing before the commissioners was a matter of favor only, and not of right, and that this case should be considered as if the valuation had been increased or fixed by the board without the presence of any of the officers of the corporations, and without *express notice* of the purpose of the board to increase the value of the railroad property; and in this light it is perhaps proper to consider the question, that the rights of these parties may be finally determined.

It is maintained by the appellants that the legislature of the State has no power to provide any mode for taxing railroads which will deprive them of the same remedies that other tax-payers have against arbitrary assessments, or which will make the property of such corporations contribute more than their just and equitable share of the burden of taxation.

Before proceeding to the consideration of the principal question involved, it will be necessary to notice the present mode of assessment, with the remedies afforded the citizen for decreasing the valuation of his property when the esti-

mate placed upon it by the assessor exceeds its value.   The
right of the citizen to a hearing, when his property has been
assessed for the purposes of State revenue, has been seldom
embodied in our system of taxation, and for the greater
period of time during the existence of the State government
there was no remedy afforded but that of legislative inter-
ference, where the only ground of complaint was that his
property had been assessed for more than its value.   From
the year 1873 to the year 1878 no appeal was allowed from
the action of the assessor to any tribunal for the purpose of
hearing such complaints, and we are not aware of any ques-
tion made as to the constitutionality of such a revenue law.
The doctrine "that the mode of levying, as well as the right
of imposing taxes, is completely and exclusively within the
power of the legislature," has always been adhered to by
the courts of this State, for the palpable reason, as stated by
Mr. Justice Cooley in his work on Constitutional Limitation:
"There is no reason for the supposition that in a matter of
this public importance, when promptness in collection is
always desirable and often imperative, dilatory proceedings
of this nature (through the forms of process and jury trial)
were within the contemplation of the people when consent-
ing to any general provision of the constitution."   The very
existence of the government depends upon this summary
mode of collecting its revenue, and the delay occasioned by
appeals to the judicial tribunals of the State upon the mere
question as to the value of the property, while it might, in
some instances, relieve the citizen, would conduce to destroy
the government by taking from it that attribute of sover-
eignty without which it can not exist.   As said by the
supreme court, in the case of Providence Bank v. Billings
(reported in 4 Peters), "the intent, wisdom and justice of

the representative body, and its relations with its constitu-
ents, furnish the only security, when there is no express
contract, against unjust and excessive taxation, as well as
against unwise legislation generally;" and in the case of St.
Louis v. The Ferry Company (11 Wallace) the same court
said: "It has been said that the power of taxation for the
purposes of the Commonwealth is a part of all governmental
sovereignty, and is inseparable from it. It is for the legis-
lature to decide what persons and property shall be reached
by the exercise of this function, and in what proportions,.
and by what process and instrumentalities taxes shall be
assessed and collected."   In the case of a State tax imposed
on bonds held outside of the State (reported in 15 Wallace)
it is further said: "Unless restrained by the provisions of
the Federal constitution, the power of the State as to the
mode, form and extent of taxation, is unlimited where the
subjects to which it applies are within her jurisdiction;" and
in the case of Kirtland v. Hotchkiss (in 10 Otto) the same
general principle is again recognized.   The abuse of this
power by the State was never held as sufficient to warrant
interference by the Federal judiciary.   While this power, as
to the mode and amount of taxation, is to be exercised alone
by the legislature, "and no attribute of sovereignty is more
pervading," the legislative department of the government
is not clothed with the power of confiscating the property
of the citizen under the guise of taxation.   "Certain ele-
ments," says Mr. Justice Cooley, "are essential in all taxa-
tion.   It does not necessarily follow because the power is
so vast that everything which may be done under pretense
of its exercise will leave the citizen without redress, *even
should there be no conflict with any express constitutional in-
hibition.*"

"Absolute arbitrary power over the liberty and property of the citizen exists nowhere in a republic, not even in the largest majority." (Bill of Rights, sec. 2.)

The legislature has no such power as to discriminate between the citizens by making one or more assume the entire burden of taxation, and exempt the others. Approximate equality in distributing the burden, and uniformity in the mode of assessment, is the cardinal rule, and, as said by this court in the case of the city of Lexington v. McQuillan's heirs, "that while taxation may not be universal, it must be general and uniform." Equality, such as is practicable, is essential to the constitutionality of taxation, and the only exception is found in cases of local taxation, where the special benefits authorize the imposition of the burden upon those who derive the benefits. From the case of the City of Lexington v. McQuillan's heirs (9 Dana), decided in the year 1840, and the intermediate cases, including the case of Preston v. Roberts, decided at the January term, 1877, this court has held the rule as to uniformity and equality to be fundamental, and gone perhaps as far as the courts of any State in the Union in protecting the citizen against oppressive taxation. "That there shall be equality, as far as is reasonably practicable, in the distribution of public burdens, whether local or general, is a cardinal principle in the law of taxation, and flagrant departures from that rule ought not to be allowed, unless more equal distribution, under the circumstances, is attainable." (Preston v. Roberts, 12 Bush.)

Whether this cardinal rule as to uniformity and equality has been violated, we shall now proceed to consider. Under the general law for assessing property, real and personal, in this State for taxation, the owner is required to list it under oath with the assessor, and, after this has been done, the

502 KENTUCKY REPORTS. [VOL. LXXXI.

Cin., N. O. & Texas Pacific R. R. Co., &c., v. The Commonwealth.

assessor, upon his own knowledge and other evidence, fixes a full and fair valuation on the property. (See secs. 11–13 and 16 of art. 5, chap. 92, General Statutes.) By article 6 of the same chapter a board of supervisors, consisting of three tax-payers (citizens), is appointed by the county court, with the power to correct any errors committed by the assessor, whether in fact or in relation to the valuation of the property listed, and when the property has not been correctly valued, to fix a proper value on the same. (Sec. 6 of art. 6.) By an act approved April 2d, 1878, this last act was so amended as to prevent the board from changing the value of the property, as fixed by the assessor, without giving notice to the owner, to be served by any officer authorized by law to serve a summons. The party aggrieved may, if the board decides against him, appeal to the county judge, and, if over fifty dollars, may appeal from the decision of the county judge to the circuit court. The legislature having seen proper to submit this question of valuation, at the instance of the citizens, to the courts of the State, and not leaving it with the revisory board, being merely a question of policy, no necessity exists for inquiring into the expediency of the measure, as in either case, after the property has been assessed, the increase in valuation is not to be made without a hearing by the party whose rights are to be affected by the decision of the board. These appellants (the railroad companies) say that the remedy afforded the citizen under the general law is not only withheld from them, but they are denied the right to a hearing before the tribunal (board of commissioners) whose judgment becomes final as to the question of valuation. The board of railroad commissioners are required to meet annually at the office of the auditor in Frankfort, on the *first day of September in each*

*year*, for the purpose of correcting and equalizing the value of the property of these corporations, and the same rate of taxation for State purposes which is, or may be, in any year levied on other real estate in this Commonwealth, shall be levied on the value so found by the board. A railroad must necessarily be regarded as a unit, and as this court has determined, by reason of legislative authority, must be taxed as such. Its rolling stock can not be seized and subjected for taxes assessed for municipal purposes, nor are railroads listed by the assessors of the counties through which they may pass for taxation. All of the locomotives, cars, &c., are treated as fixtures, and there is no better or more practical mode of assessing such property than to treat the whole as real estate.

The principal object of the legislature in having this board of commissioners to assess and supervise the taxing of such corporations was, that no injustice might be done the companies' by subjecting their property to fragmentary assessments, subject to the revision of the supervising board of each county through which the road might run. Fragmentary taxation of the same line of road by a dozen or more different assessors would scarcely produce that uniformity in assessment so absolutely essential to produce equality in taxation, and the legislative purpose was to obviate such an objection and have a uniform assessment of this class of property, and no wiser suggestion could have been well made than to place the valuation in the hands of a board of intelligent freeholders, to be selected by the executive of the State, thus removing the question of value from local influences and prejudices that often result in imposing upon such corporations oppressive burdens. These corporations should contribute their just proportion of the pub-

lic burden, and no more. They have not been taxed on their property in a greater sum than any other owner of real estate, and when enjoying greater rights and privileges in the use of their property than ordinarily pertains to the individual owner of real estate, they should not complain of a mode of assessment that must, in its results, produce equality in the distribution of the tax.

While these companies may not have the right to appear before the county board of each county, they have had the valuation of their property fixed by the railroad commissioners, and are not even complaining now that the valuation is too high. The classification of property in this State for the purposes of taxation has been the subject of much legislation. Corporations such as banks, insurance companies, express companies, and railroad companies, have been required to list, or have their property assessed, in a different mode than that prescribed by the general law. Specific taxation is the rule with reference to corporations of one class, and a mode different from the general law designated in determining the value of other corporate property. The constitutionality of such legislation is now being questioned, when no discrimination is made to appear, and no greater burden imposed on the property of appellants than upon other property of the State, whether belonging to individuals or corporations.

When the citizen is permitted to leave the board of supervisors, and go by an appeal to the circuit court to have his taxes decreased, there arises a much more serious constitutional question than is presented in this case. The imposition of taxes is not a judicial function; still, under the statute of this State, the courts of the State are required to hear complaints as to the valuation of property by the revi-

sory board, and to fix the value of the property to be taxed, or direct the board from which the appeal emanates to enter the opinion of the court as to the amount for which the citizen should be taxed. The chancellor and common law judge should hesitate before converting themselves into tax-gatherers or assessors, although the ascertainment of value may be in the nature of a judicial finding.

It is only a question with the legislature whether the property of such corporations shall be assessed by the railroad commissioners, whose judgment shall be final, or subject their property to assessment by the county assessors, subject to revision by the county supervisors or the county judge. This question has, in effect, been decided by the supreme court of the United States, on an appeal from the supreme court of Illinois, in an opinion rendered by Mr. Justice Miller in what is known as the "*State railroad tax cases,*" reported in 2 Otto. It was alleged in one of those cases that the value of the railroad track, as returned by the chief officer of the company to the county clerks and auditor, was $648,436.41, and that the State board of equalization had assessed the value of the railroad track at $1,629,-556; that the aggregate value of the rolling stock, as returned to the auditor, was $338,039, and the aggregate value, as fixed by the board of equalization, was $1,000,110. It was further alleged *that the assessments had been made without notice to the railway company.*

The law in regard to the assessment of railroad property in the State of Illinois is very similar to that in existence in this State, the principal difference being that the movable property of such corporations is deemed personalty. The State, county and city taxes are collected on the assessment made by the board of equalization. It has larger powers

than is confided to the railroad board of commissioners in this State. The tax-payer in the State of Illinois, as in this State, must have notice before his property is increased in its value by the town or county supervisors, while the valuation of the corporate property may be increased by the State board without actual notice. It is true the State board may increase the valuation of the property of any citizen in the same way, but this does not deprive him of the right to notice when the county or township supervisors undertake to increase the value. This action of the county or town supervisory board may, and doubtless does, control the action of the board of equalization. The citizen has the benefit of the action of the county boards, and the corporations submit alone to the action of the State board, so there is but little, if any, difference in the questions involved in those cases and the one being considered.

It is argued, however, that the constitution of the State of Illinois expressly confers upon the General Assembly the power "to tax persons or corporations owning or using franchises and privileges in such manner as it shall, from time to time, direct by general law, uniform as to the class upon which it operates." This provision of the Illinois constitution, although not found in the constitution of this State, is but the recognition of a power that exists with the legislature in the absence of a constitutional provision. It is not necessary, or even practical, that the mode of assessing and taxing property shall be uniform, but all property, or kinds of property, must be taxed equally and at a uniform rate   The mode of assessing the property of a railroad can not well be similar to the general mode of assessment, and if the mode adopted does not make corporate property contribute more than its just share of the burden, the pro--

ceeding is not open to constitutional objection on that ground. One county assessor would have the same right to assess that another would where the road ran through the county of each, and therefore the necessity of resorting to some other instrumentality for the purpose of fixing the value.

It is further maintained by counsel for the appellants that the denial to these companies of the right to be heard, or the absence of an express provision in the act requiring notice to be given of the proceedings of the board, renders the assessment void. This identical question was decided in the tax cases referred to, when the board had increased the assessment or value fixed by the local board, or chief officer of the railroad company, in the absence of any notice required by the act, and upon the allegation that no notice had been given. We are aware that in these cases the appellants were seeking an injunction against the collection of the tax, and the difference between that class of cases and those where the State undertakes by an action in a court of law, authorized by statute, to enforce payment of the tax, a defense would be permitted to be made to the action at law that would not authorize the granting of an injunction by a court of equity. This rule can not affect the constitutional question. It is urged that the assessment is in violation of the Federal constitution, and, if so, it was void, and should have been so held by the chancellor. In response to this argument, Mr. Justice Miller, speaking for the court, said: "It is hard to believe that such a proposition can be seriously made, because, if void as to the railroad companies, it must be equally void as to every other owner of property in the State. If the corporation is entitled to notice, every individual is equally entitled to it. The board had its time of sitting fixed by law. Its sessions are not secret; no

obstruction exists to the appearance of any one before it to assert a right or redress a wrong." The appellants urge that notice is indispensable, and, as said by the learned judge, if so, it must be void as to all.

But it is said that the board of commissioners in this State have no supervisory power over any property but that of railroad property, and therefore the cases referred to have no application. This can make no difference, if actual notice is required before an assessment can be made, or an opportunity to be heard after an assessment has been made. The cases are identical so far as affects the constitutionality of the act. The opinion in the tax cases in the county of Santa Claire and others against various railroad companies, delivered by Mr. Justice Field in the ninth circuit district of California, has been referred to in support of the position assumed by appellants. We do not understand that such a question was involved in the consideration of those cases. It was held in the opinion in those cases that until the adoption of the fourteenth amendment there was no restraint to be found in the constitution of the United States against the exercise of the taxing power of the States, but that the first section of the fourteenth amendment, declaring that "no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any *person* of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws," prohibited the imposition of unequal burdens by the State, and therefore gives to the Federal judiciary jurisdiction over such questions. Whether or not this is a proper construction of the amendment, is a question not before us, and in regard to which we express no opinion.

Unjust discrimination in imposing taxation, where ine-quality is necessarily produced, has never met the approval of this court, but, on the contrary, has always been held to be unconstitutional; but we are not prepared to say that the ordinary mode of assessing property is invalid for the want of actual notice to the owner. The assessment is made by the assessor on the oath of the owner and other evidence, and because the owner has no appeal, or revisory board to revise the assessment, affords no constitutional objection to the law. Section 12 of the Bill of Rights provides "that no one can be deprived of his life, liberty, or property, unless by the judgment of his peers or the law of the land." The words, *law of the land*, are equivalent to *due process of law*, and mean the right to be heard for the preservation and pro-tection of life, liberty, and property; but it was never sup-posed that this provision of the Bill of Rights applied to the exercise of sovereignty in imposing taxes for its preser-vation and maintenance, other than the right of the assessor to value the property upon the oath of the tax-payer and other evidence, as provided by the statute; and if dissatis-fied with the valuation, the owner, in the absence of a pro-vision giving him a further hearing, must look to the legis-lature for relief, and not to the judicial tribunals of the State. Such has been the uniform construction of the State courts where the term *due process of law or its equivalent* is found in State constitutions, and attempted to be applied to ques-tions affecting State taxation for revenue purposes. The burden of State taxation is made at last to rest upon the shoulders of those whose incomes, while they furnish a com-fortable support, seldom result in adding to the capital invested. They make no complaint of the burden, but capital at war with taxation, when it affects the income, or

the State imposes what is conceived to be too onerous a burden, is demanding an appeal either to the revisory boards or the judicial tribunals of the State, resulting often in exemption from a just and proper taxation.   The hands of the sovereign are tied, and the State government on the verge of bankruptcy, while the propriety of the tax is being considered by the State and local tribunals.    "With regard to the precise mode of exercising the taxing power, the legislature, unless restricted by some constitutional provision, seems to be invested with entire discretion."   (Hilliard on Taxation, p. 3.)   The supreme court of the United States, in the case of Kelly v. Pittsburgh (reported in 14 Otto), uses the following language: "The main argument for the plaintiff in error—the only one to which we can listen—is that the proceeding in regard to the taxes assessed on his land deprives him of his property without due process of law.   It is not asserted that in the methods by which the value of his land was ascertained, for the purpose of taxation, was any departure from the usual mode of taxation, &c.   In these respects there is no charge that the method pursued is not due process of law.   Taxes have not, as a general rule in this country since its independence, nor in England before that time, been collected by regular judicial proceedings.   The necessities of government, the nature of the duty to be performed, and the customary usages of the people, have established a different procedure, which, in regard to that matter, is and always has been *due process of law.*"   In High v. Shoemaker (22 California) the court said: "Because universal practice had established, at the time our constitution was adopted, that this provision (referring to due process of law) in the constitution was not understood as applicable to proceedings by the State to ob-

tain from citizens their proper contributions to the expenses of administering the government." Again, in the tax cases reported in 2 Otto, the court, alluding to the Federal statute of 1867, preventing a suit in any court for the purpose of restraining the assessment or collection of any tax, says: "'And though this was intended to apply alone to taxes levied by the United States, it shows the sense of congress of the evils to be feared if courts of justice could in any case interfere with the process of collecting taxes on which the government depends for its continued existence. It is a wise policy. It is founded in the simple philosophy derived from the experience of ages, that the payment of taxes has to be enforced by summary and stringent means against a reluctant and often adverse sentiment, and to do this successfully other instrumentalities and other modes of procedure are necessary than which belongs to courts of justice." The mode of assessing and collecting taxes is not in the nature of a judicial proceeding. It is not a judicial inquiry where parties must have notice and the right to be heard. Revisory boards may be established and appeals allowed by the legislative department of the State; but such modes of relief arise from questions of expediency, but can not be demanded as a constitutional right. When an assessment has been made in the manner prescribed by the statute, and tribunals are organized with a view of disturbing that assessment by increasing the value of the property taxed, the party affected by it ought to have an opportunity to be heard, and it is in this class of cases where it is asserted that the constitutional right to be heard can not be denied. But even in a revisory board, with full power to revise the acts of the assessor, it would be impracticable to give such notice as is usual in judicial proceedings before the board can take

512 · KENTUCKY REPORTS. [VOL. LXXXI.

Cin., N. O. & Texas Pacific R. R. Co., &c., v. The Commonwealth.

action. The time and place of meeting having been fixed by law, is notice to all, and if the reports of the chief officers of these corporations are to be regarded as an assessment and the commissioners a board of review, the act provides *that they shall assemble at the auditor's office in Frankfort, on the first day of September in each year,* for the purpose of fixing valuations, and with that view are required to examine the reports made by the officers of the roads. This is notice to the companies, and to require actual notice to every one interested, if this board has supervisory power over all property in the State, would be altogether impracticable; nor will it answer to say that because there are only a few lines of railroad within the State, that actual notice could be readily given, for the courts would then be determining the constitutionality of the act by the extent of their supervisory power.

As we construe this act, although in the nature of an original assessment, the parties had the right to be heard, and were, in fact, heard before the board passing on the question of valuation. If actual notice is necessary, and the right to be heard expressly provided for by statute in such cases, then it is immaterial what may have been embodied in the constitution of the State of Illinois. Those cases fall within the prohibition of the fourteenth amendment, if the views of counsel prevail as to its construction. The opinion in the tax cases from that State covers the entire ground, and we are not only disposed to follow it because it disposes of the constitutional question, but for the reason that it recognizes and establishes a sound and conservative doctrine with reference to State taxation.

It is further argued that as a board the commissioners have no power to increase the value of such property, and that

their duty on that point is confined to the equalization of the valuation as reported by the various companies. We do not so understand the enactment, but, in our opinion, the prime object was to fix the true value, and increase each valuation, or the aggregate value, if in the opinion of the board the value was too low. It is in fact an assessory board, and the value fixed by the commissioners must stand.

We find no discrimination made against the corporation in favor of the citizen. The same taxes are paid upon the same values and kind of property, and we perceive no reason for disturbing the judgment below. The same is now affirmed in each case.