83   219
86   151

83   219
o113 962

CASE 83—PETITION EQUITY—SEPTEMBER 26.

# Bank of Louisville v. Board of Trustees of Public Schools.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. CONSTITUTIONAL LAW—ESCHEATS.—An act of the Legislature, approved April 22, 1882, provides that money on deposit, the last owner of which has not been heard of for eight years, shall vest in the Commonwealth: *Provided*, That property in the city of Louisville "subject to escheat to the Commonwealth" shall vest in the Board of Trustees of the Public Schools of said city. The act further provides that money thus paid into the Treasury shall be reimbursed to the owner upon proper proceedings: *Provided*, The Board of Trustees of the Public Schools, and not the State, shall be liable for money paid to the former.

    *Held*—That this act is unconstitutional in so far as it provides that *all* such deposits shall vest in the Board of Trustees of the Public Schools, as it, in that respect, impairs the obligation of contracts. The act, however, is constitutional in so far as it vests in the Board of Trustees of the Public Schools such deposits as are subject to escheat to the Commonwealth under section 1, article 1, chapter 36, of the General Statutes.

2. PRESUMPTION OF DEATH.—Our statute, which provides that death shall be presumed after an absence from the State for seven successive years, unless proof be made that the person was alive within that time, was not intended to exclude all presumptive evidence of death where it does not appear that the party left the State.

    In this case, the non-appearance of depositors at a bank for twenty years and the non-claimer by them of their deposits, are circumstances sufficient to raise a presumption of death.

3. EXISTENCE OF HEIRS PRESUMED. — Whether long-continued absence will raise the presumption of death *without issue*, must depend upon the circumstances of each particular case; but the legal presumption is that a person leaves *heirs*, either near or remote, and where the testimony is merely negative, and relates to mere absence only, it is insufficient to raise the presumption that the person died intestate, and without *heirs*.

HAMILTON POPE FOR APPELLANT.

1. The amended petition should have been stricken from the files because it sets up a new cause of action, and is a departure from the original petition. (Taylor v. Moran, 4 Met., 130; Brookover v. Hurst, 1 Met., 669; Swan v. Goodwin, 2 Duv., 300.)

2. The act under which appellee seeks to recover is unconstitutional, because it deprives the bank of its right to hold, and the depositors of their right to demand, their money, and therein impairs the obligation of contracts. (Henderson & L. S. R. R. Co. v. Dickerson, 17 B. M., 177; McKinney v. Carroll, 5 Mon., 98; Lapsley v. Brashear, 4 Litt., 34–39; Grayson v. Lilly, 7 Mon., 10; Blair v. Williams, 4 Litt., 46; Wilson v. Churchill, 5 Dana, 335; Davis v. Ballard, 1 J. J. Mar., 563; Graves, &c., v. Buford, 1 Dana, 491; Sutton's Heirs v. City, 5 Dana, 33; Smith's Commentaries on Constitutional Construction, 174, 253, 262, 347–8, 363; Cooley's Const. Limit., pages 90–1, 165–6; Const. of Ky., article 13, sections 3, 20; Morse on Banking, 32–3.)

3. The fact that a person has not been heard of for seven years does not raise the presumption that he is dead, unless it appears that he left the State. (General Statutes, chapter 37, section 16; Spurr, etc., v. Trimble, etc., 1 A. K. Marsh., 206.)

4. The burden of proving the death of a person is upon those who set it up. Mere absence is not enough to prove death. (Barney v. Ball, 24 Ga., 505; Emerson v. White, 29 N. H., 482; Asbury v. Sanders, 8 Cal., 62; Gilliland v. Marlow, 3 McLean, 490.)

5. Even if the death of the depositors be presumed, it can not be presumed that they died intestate and without heirs. (Gray v. McDowell, 6 Bush, 482.)

RANDOLPH H. BLAIN FOR APPELLEE.

1. The act under which appellee claims does not impair the obligation of contracts. (Acts 1881, volume 1, page 108; Const. of Kentucky, article 13, section 20; Blair v. Williams, 4 Litt., 36; Lapsley v. Brashear, *Ibid.*, 54; Bronson v. Kensie, 1 Howard, 316; McCracken v. Hayward, 2 How., 612; Ogden v. Sanders, 12 Wheat., 259; Story on Const., 1380; Cooley's Const. Lim., 286; Sedgwick on Construction of Statutes, 630.)

2. The contract between bank and depositor is one of common debtor·

Bank of Louisville v. Board of Trustees of Public Schools.

and creditor. (Addison on Contracts, section 817; Morse on Banks, page 28; Curtis v. Leavitt, 15 N. Y., 9; National Bank v. Elliott Ban,k 20 L. R., 138; Keene v. Collier, 1 Met., 417.)

3. The act does not divest vested rights without due process of law.

  a. As to what is "due process of law." (Cooley on Const. Lim., 352, 353, 356, 390; Dartmouth College v. Woodward, 4 Wheat., 519; Varden v. Mount, 78 Ky., 89; Joyce v. Woods, *Ibid.*, 386.)

  b. As to the vested rights of the bank. (Morse on Banks, pages 40–42; Adams v. Orange Co. Bank, 17 Wend., 514; Acts 1869, volume 1, page 41; Cooley on Const. Limit., 370.)

  c. As to the right of the bank, by reason of the fact that the depositors. may re-appear. (Newman v. Jenkins, 11 Pick., 515; Rowe v. Hasland, 1 Wm. Bl., 404; Olmstead's Appeal, 86 Pa. St., 285; Starr v. York Nat. Bank, 55 Pa., 364; Frazier v. Erie Bank, 8 W. & S., 20.)

  d. As to the interest of the depositor. (Kent's Com., volume 4, page 427; General Statutes, section 7, page 408; Burgess v. Wheat, 1 Wm. Bl., 133.)

  e. The act provides that title by abandonment shall be found by a court of equity. This is a judicial finding, and is equivalent to office found. (Burgess v. Wheat, 1 Wm. Bl., 130; Fairfax v. Hunter, 7 Cranch, 604; United States v. Repentigny, 5 Wal., 267–8; Bennet v. Hunter, 9 Wal., 337.)

4. The act does not take private property for public use. (General Statutes, section 14, page 121; Sedgwick on Const. of Statutes, pages 423, 443, 456; Board of Trustees, &c., v. Auditor, 80 Ky., 341.)

5. The act vests in the State title to abandoned property which was before vested in it by the common law. (2 Bl. Com., pages 8, 9, 14, 15; 1 Wm. Bl., 133–141; 4 Kent's Com., page 426; Barclay v. Russell, 3 Vesey, 424; Commonwealth v. Blanton, Ex'r, 2 B. M., 397; Middleton v. Spicer, Brown's Ch'y Rep., 201.)

6. The act establishes a rule of evidence by which to determine abandonment, which is neither arbitrary nor uncommon. (2 Bl. Com., pages 9, 200, 211; Cooley's Const. Limit., page 360.)

7. As to presumption of death. (Greenleaf on Evidence, volume 2, page 178; Starkie on Ev., volume 2, page 365; Bailey v. Hammond, 7 Vesey, 590; Baxter v. Baxter, 5 Vesey, 458; Junius v. Compton, 1 Rowle, 375; Dunsmen v. Boulderson, 5 Jur., 958; Grissel v. Stilfox, 9 Jur., 890; *In re* Grant, 6 Vesey, 512; Lee v. Wilcox, *Ibid.*, 605; Banning v. Griffin. 15 East, 149; *In re* Phene, 5 L. R. Ch.; Morehead & Brown, page 544; 1 Revised Statutes, pages 458, 469; General Statutes, section 16, page 412; Howse v. Stoker, Revised Statutes, volume 1, page 471 (*n*); Foulkes v. Ray, 7 Bush, 568.)

8. The act establishes a rule of evidence, which is not objectionable because retrospective. (Cooley's Const. Limit., 367.)

9. Where there is a right, the Legislature may give a remedy. (Cooley's Const. Limit., pages 373-4.)

10. Other States have similar statutes. (Connecticut Statutes, page 345, sections 2, 3; Cal. Stats., sections 41, 5670, 11966; Ark. Stat., sections 2385, 5538; Texas Stat., section 3957; Ill. Stat., volume 2, page 956; Va. Stat., page 877, sections 30-32; Pa. Stat.)

11. Decisions under the statutes of other States. (West's Appeal, 64 Pa., 146; Commonwealth v. Naile, 88 Pa. St., 435; Deadrick v. Co. Court, 1 Cold. (Tenn.), 202.)

12. Statutes are presumed to be constitutional until the contrary is clearly shown. (Cooley's Const. Lim., pages 88, 183; Ogden v. Sanders, 12 Wheat., 270; Cumb. and Ohio R. R. Co. v. Barren Co., 10 Bush, 162.)

13. It is sufficient for the State to show generally that no one has been found to claim as heir. (People v. Fulton Fire Ins. Co., 25 Wend., 216; People v. Etz, 5 Cow., 314; Doe v. Jesson, 6 East, 80; King v. Fowler, 11 Pick., 302.)

14. In a pedigree case a man presumed to have died, is presumed to have died unmarried and without issue. (Doe v. Dakin, 17 Eng. C. L., 300; Oldham v. Wooley, 15 Eng. C. L., 150.)

SAME COUNSEL IN PETITION FOR REHEARING.

1. The Board of Trustees is a department of the State Government, and, therefore, a right to sue it is a right to sue the State. (Board of Trustees v. Auditor, 80 Ky., 341; General Statutes, page 158, section 1, article 2.)

2. The rule of evidence applicable in real actions does not govern in an action to escheat personalty. (McComb v. Wright, 5 Johns. Ch'y, 263; King v. Fowler, 11 Pick., 302; Hays v. Trible, 3 B. M., 106; Sprig v. Moale, 28 Md.; Stinchfield v. Emmerson, 52 Me., 465; Harvey v. Thornton, 14 Ill., 217; Finley v. Humble, 1 A. K. Mar., 294; Commonwealth v. Blanton, 2 B. M., 293; 2 Best on Evidence, 405.) Personal property vests in the administrator, and there is no right of action in the heirs or distributees. (2 Chitty's Bl., 512; Newman's Pleading and Practice, 94-5, and authorities cited.)

3. The act of April 30, 1884, as to escheats, passed pending this appeal, must control the decision of this court. (Acts 1884, volume 1, page 90; Gaines v. Gaines, 9 B. M., 301; Louisville v. McKegney, 7 Bush, 654; Allison v. R. R. Co., 9 Bush, 248; Cooley's Const. Lim., page 367; State v. Norwood, 12 Md., 204; U. S. v. Schooner Peggy, 1 Cranch, 106.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

By an act approved April 22, 1882, the Legisla-
ture provided:

"1st. That article 1, chapter 36, General Statutes,.
be amended as follows: That all property, rights of
property, credits or moneys, held on deposit or other-
wise, the last known owner of which has not been
heard of for eight years, and has not exercised any
act of ownership over the same for eight years, shall
vest in the Commonwealth without office found, and
may be recovered by the Commonwealth by an ac-
tion in equity. The receipt of the Auditor, or the
order or judgment of a court of equity, shall be a.
full discharge or acquittance to the person or depos-
itary surrendering the possession of said property:
*Provided*, That property in the city of Louisville
subject to escheat to the Commonwealth, shall vest
in the Board of Trustees of the Male High School,
the Female High School, and the Public Schools of
the city of Louisville, for the use and benefit of the
said schools, and the said board shall have and ex-
ercise as to all such property the rights, remedies,.
and responsibilities of the Commonwealth as pro-
vided in this chapter as amended.

"2d. *  *  *  The net proceeds of any estate
embraced in this chapter which may be paid into
the Treasury, shall be reimbursed to the owner or
person by law entitled to the same, who had not be-
fore asserted claim thereto, upon his producing to
the Auditor the certificate of a court of equity, that
in a proceeding upon petition in said court, after
due notice served upon the Auditor, and time given

to make defense, it was found, upon final hearing, that the claim was just and proper: *Provided*, That the State shall not be liable for money paid to the Board of Trustees of the Public Schools of the city of Louisville, but the said board shall be liable therefor, in like manner as the State is liable, where it has received the escheated property, and shall refund the same upon like proceedings against it, as provided for in this chapter against the State."

This action was brought on May 18, 1882, by the Board of Trustees of the Public Schools of Louisville, under the act *supra*, to recover of the Bank of Louisville certain deposits made by different persons, at different times between the years 1835 and 1864. Following the provisions of the act, it was alleged that the depositors had not been heard of for more than eight years ; that they had not exercised any act of ownership over the money for said length of time, and that the plaintiff was, therefore, entitled to it as an escheat. A demurrer to the petition was sustained upon the ground that the act was unconstitutional ; and whether this ruling was correct is now before us upon a cross-assignment of errors by the appellee.

The plaintiff filed an amended petition, alleging that the depositors had died intestate and without heirs, thus bringing the case within section 1, article 1, chapter 36, of the General Statutes, which says: "That part of the estates not disposed of by will of persons who have died, or may hereafter die in this Commonwealth, without heirs or distributees entitled to the same, shall vest in the Commonwealth

without office found, subject to the debts and liabilities of the decedent."

The answer of the bank put in issue the statements of the petition as amended; and the only evidence taken was by the plaintiff, and it consists of the testimony of the president of the bank, who became connected with it in 1851 or 1852, and the cashier, who had been such officer for ten years; and is of an entirely *negative* character so far as it relates to the death of the depositors, and whether they died intestate and without heirs.

Upon these points they, in substance, say that they know nothing of the depositors; do not know whether they are dead or alive; or whether they ever knew them or not; or whether they could identify them or not; or if dead, whether they died testate or intestate; or if intestate, whether they left heirs or not; but that they have not exercised any control over the deposits within the previous eight years, or indeed at any time since they were made, to their knowledge.

Upon the hearing in chief a judgment was rendered for the Board of Trustees, and the appellant has appealed upon the ground that it is not supported by the testimony.

It is proper to first pass upon the question presented by the appellee, because if the act of April 22, 1882, is constitutional, then the judgment must stand, although the court below based it upon a different ground.

It is urged, upon the part of the Board of Trustees, that the deposits were abandoned property;

and that the title to them, therefore, vested in the sovereign or State by the common law before the passage, and without the aid of said act; that it merely imposes upon the sovereign as an express trust the taking and holding of such property for the protection of the owner, and the benefit of all, and prescribes only a rule of evidence.

In considering the question, the respect due the law-making power, as well as judicial precedent, requires that we shall *presume* the law to be constitutional; but when the contrary is *clearly* shown, our duty is plain. When a deposit is made in a bank a contract is created between the depositor and it, by which it acquires the right to retain, use and control the money, subject to be returned to its customer upon his demand. That moment a right vests in him to look to the bank, and to *it alone*, for repayment; and, upon the other hand, the bank is invested with the right to hold the deposit against all others. The law then existing becomes an integral part of the contract, and creates these vested rights. The act now in question divests both the bank of its right to hold the money, and the depositor of his right to it, because he has not been heard of for more than eight years, and vests it in the appellee.

This divests both the bank and the depositor of a vested right, because it consists in the power to do certain actions or possess certain things. The obligation of the contract created when the deposit is made is impaired. It consists in the remedy given by law to enforce it; and while the remedy may be

changed, it can not be taken away or lessened, at least not without, in the language of Mr. Cooley, leaving "*the parties a substantial* remedy, according to the *course of justice* as it existed *at the time* the contract was made." (Cooley's Con. Limitations, p. 286.) If it be withheld or taken away the contract has no *legal obligation*.

In this instance the act provides that "the receipt of the Auditor or the order or judgment of a court of equity shall be a full discharge or acquittance to the person or depositary surrendering the possession of said property," thereby depriving the depositor of the right to sue the bank in case of its refusal to pay him, and providing him no "*substantial remedy*" in lieu of it, because, by the act, the depositor has no right to look to the State or sovereign for re-imbursement, but must look to the Board of Trustees of the city schools of Louisville. To hold such a law constitutional would be equivalent to saying that the Legislature may take from A his property and give it to B or a corporation, by providing that the donee shall re-imburse A for it; or that it may transfer the vested contract right of A to look to B for his money or debt to a right to look to another individual. It is urged, however, that the depositor, notwithstanding the provision *supra* of the act, may still sue the bank and recover his money. Even if this be so, it does not render the law constitutional, because, in such an event, it deprives the bank of its vested contract right to hold the money to answer the depositor's demand, and furnishes it no remedy unless it be to.

look to the Board of Trustees for re-imbursement, which would not be a "*substantial remedy*" within the meaning of the law.

If an act forfeiting lands to the Commonwealth in case the owner did not, within a certain time, make certain improvements, was properly held unconstitutional, as impairing the obligation of contracts; or if a replevin law of two years was so as to contracts made before its passage, and when a three months' replevin law was in force, because the remedy was thereby affected, it seems to us there can be but little question but what our duty requires us to say that an act which takes the property of one person and gives it to another or a corporation, however worthy may be its objects, and which makes C, instead of B, the debtor of A, although the latter and B had contracted otherwise; or which takes from B the property intrusted to him by A and gives it to C, and yet leaves B liable to A without affording to B any remedy unless it be the uncertain one of looking to C for re-imbursement, is forbidden by both natural equity and constitutional law. (Sections 12–20, Bill of. Rights, General Statutes, pages 121–2.)

The act is not one of limitation, nor does it merely prescribe a rule of evidence. It is not an amendment to chapter 37 of the General Statutes, entitled "Evidence," but its title is: "An act to amend article 1 and article 5, chapter 36, of the General Statutes of Kentucky, entitled 'Escheats and Escheators,' so far as, the same shall apply to the city of Louisville;" and it provides, that if the owner of the property

has not been heard of, and has not exercised any control over it for eight years, that it shall, *ipso facto* and without any judicial determination, vest in the Commonwealth, or if situated in Louisville, then in the appellee.

If, however, the deposits belonged to the State, then it had a right to transfer them to the appellee; and in this respect the law in question is valid, because so much of it as is constitutional and capable of execution must be upheld. The court properly allowed the amended petition to be filed. It did not allege matters constituting a departure from the cause of action attempted to be stated in the petition, but merely supplemental to it; and it was proper to permit an amendment perfecting it, as it was defectively stated.

Coming now to the complaint of the bank, it is claimed that while under our statute and the common law the death of the depositors may be presumed under certain circumstances, yet that it has not been shown that they died intestate and without heirs, and that the law authorizes no such presumption upon the testimony.

Upon the other hand, it is urged that this presumption may arise from merely *negative* evidence, and that the judgment for the Board of Trustees is sustained by *the best evidence the nature of the case affords.*

If the depositors are dead, and died without heirs and intestate, then the State, as the ultimate heir, became entitled to the deposits. After a great lapse of time strict proof in some cases may be dispensed

with, and its place supplied by presumption. Secondary evidence, however, to be admissible must not only be the best attainable, but the best legal evidence.

By the civil law, death was not presumed from absence; but by the common law, while, in the absence of all evidence, continuance of life to an ordinary age is presumed, and the burden is upon the party alleging the death, yet if an absence from home or the domicile for seven years, without intelligence of the person be shown, then the burden shifts, the presumption of life ceases, and it is incumbent upon the party asserting it to show that the person was alive within that time. Our statute provides:

"If any person who shall have resided in this State go from, and do not return to, this State for seven successive years, he shall be presumed to be dead in any case wherein his death shall come in question, unless proof be made that he was alive within that time."

It only applies to cases where persons leave the State and do not return for seven years; but this was not intended to exclude all presumptive evidence of death, unless the party left the State; and does not apply in this instance, because the testimony does not show where the depositors lived or that they left the State.

We, however, regard the testimony, although of a negative character, as sufficient to raise the presumption of death. The non-appearance of the depositors at the bank for so long a period, and the non-claimer by them of the deposits, are circum-

·stances which tend strongly to sustain such a pre-
,sumption.    .

The statute, however, only provides for· an escheat
when the owner dies *intestate* and without *heirs*.
The reported cases are somewhat conflicting as to
whether not only the presumption of death arises
from long continued absence, but also that the per-
son died without *issue*.

In McComb v. Wright,' 5 John. Chan., 263, it was
held that ignorance in a family of one of the chil-
.dren, who had gone abroad at the age of twenty-two
*unmarried*, and had not been heard of for upwards
of forty years, is sufficient, *with other circumstances*,
to warrant the presumption of his death without is-
sue.    In King v. Fowler, 11 Pick., 302, the same pre-
sumption was allowed to prevail, where the person
had been absent and unheard of for seventy years,
and inquiry had been made where it was most likely
that information could be obtained as to him.

In the case of Hays v. Tribble, &c., 3 B. M., 106,
it was said that it should not be presumed that a
married woman died without issue, because such a
presumption was contrary to probability.

In the cases of Sprigg, &c., v. Moale, &c., 28 Md.,
497, and Stinchfield v. Emerson, &c., 52 Me., 465, it
was held that it will not be presumed that a person
died without issue.

We conclude that the correct rule is, that whether
such a presumption will be indulged must depend
upon the circumstances shown in each particular
·case.  If, for instance, circumstances are proven in-
,dicating non-marriage or childlessness, then death

without issue may be presumed. (2 Greenleaf on Evi., section 354; 2 Wharton on Evi., 1279.) The statute, however, uses the word "*heirs*" and not *issue;* and the legal presumption is, that a person upon his death leaves heirs, either near or remote, capable of succeeding to his estate. It was so held in the case of Harvey v. Thornton, 14 Ill., 217, and where, as in this case, the testimony is merely *negative* and relates to mere absence only, it is insufficient to create the presumption that the person died intestate and without heirs.

It is true that, speaking in the broadest legal sense, comparatively few persons die without heirs, either near or remote, and that the doctrine of escheat proceeds upon the ground that no person appears to claim the estate; but in a case like this, where nothing is shown by the testimony but mere absence, it should not be presumed that the person died without heirs, or that none will appear to claim the property. Other circumstances beside absence should be shown, from which such a presumption may be fairly drawn.

Wherefore, the judgment is affirmed upon the cross-appeal and reversed upon the appeal, and remanded for further proceedings consistent with this opinion.