## Commonwealth of Ky. v. Thomas' Admr.

(Decided November 25, 1910.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Escheats—Statutory Provisions—Municipal Corporations—Unclaimed Estates.—Section 1606 of chapter 44, Ky. St., relating to escheats and escheators, provides in part "that part of estates lying or found in this State not disposed of by will, of persons who have died or may hereafter die without heirs or distributees entitled to same * * * or who * * * has not claimed the same, or shall not claim the same within eight years after such death, shall vest in the Commonwealth, subject to the debts and liabilities of the decedent." Section 2971 of the chapter, relating to Municipal Corporations, provides in part that "So much real, personal or mixed property in the city which from alienage, defect of heirs, failure of kindred, or other cause shall escheat to the Commonwealth, shall vest in the board (of education) for the use of the public schools. Said board may in the name of the Commonwealth for the use and benefit of the city, by its President or other officer to be designated by it, enter upon and take possession of said property, or sue for and recover the same by an action at law or in equity, and without office found The board shall sell and convey such property by warranty deed or otherwise."

2. Same—Constitutional Provisions.—The validity of section 2971 is assailed by counsel for the Commonwealth in this action, (1) because it is a violation of section 60 of the Constitution, and (2) because although it is conceded that the estates of persons who die intestate without heirs, escheat to the State, that the property or its proceeds so escheated should go into the State Treasury for the benefit of the State at large, and it is competent for the Legislature to declare that property so escheated shall be given to any specific fund or devoted to any particular purpose."

3. Delegated Power—Executive Boards.—Held, that the State has by Statute delegated some of its sovereign power to the school board to be exercised by it in its own behalf. Whenever the State governs by the aid of such governmental agencies as executive boards it must needs grant to them some of its power which, as the sovereign, it has the right to exercise itself, and this is a legitimate grant.

JAMES BREATHITT, Attorney General,   JOHN F. LOCKETT, Asst. Attorney General, and A. W. DORSEY, for appellant.

HARRISON & HARRISON for appellee.

OPINION OF THE COURT BY JUDGE O'REAR—Affirming.

In 1909 this action was filed in the Jefferson Circuit Court to settle the estate of Emma Thomas, who died a resident of Jefferson county in 1908. 'A. W. Dorsey, an escheator appointed by the State, who was made a defendant, came into the action, and set up on behalf of the Commonwealth that Emma Thomas died intestate, the owner of considerable property, as well as some real estate situated in the city of Louisville. He asked that upon the settlement of the estate any surplus left after the payment of debts vest in the Commonwealth of Kentucky upon the ground that Emma Thomas did not leave any heirs or descendants. Pending the action the Louisville School Board, by consent of all the parties, entered its appearance, and afterwards a demurrer interposed by the administrator of Emma Thomas to the pleading filed by the escheator was sustained, and his pleading dismissed. From this order, this appeal is prosecuted by the Commonwealth of Kentucky.

It is the contention of the Commonwealth that the escheator had the right on behalf of the Commonwealth to assert claim to the residue of the estate left by Emma Thomas after the payment of her debts, upon the ground that the same escheated to the State. On the other hand, it is insisted by the administrator that Dorsey as escheator had no right or authority to come into the action and assert any claim on behalf of the State, because the estate left by Emma Thomas after the payment of her debts, in the absence of any heirs, vested in the School Board of the city of Louisville, and the School Board alone had the right to assert claim to the surplus estate.

In disposing of the case, it becomes necessary that we should consider certain provisions of the statute relative to estates of deceased persons who die intestate without leaving heirs.

Section 1606 of chapter 44 of the Kentucky Statutes, relating to escheats and escheators, provides in part:

"That part of estates lying or found in this Commonwealth not disposed of by will of persons who have died, or may hereafter die, without heirs or distributees en-

titled to the same * * * who * * * has not claimed the same, or shall not claim the same within eight years after such death, shall vest in the Commonwealth subject to the debts and liabilities of the decedent."

Other sections of this chapter provide that the proceeds of escheated estates that have been sold shall be paid over to the escheator for the Commonwealth, and that any escheated property that vests in the Commonwealth shall be subject to the right of the owner, his heirs or devisees to be reimbursed upon presentation and allowance of his claim in the manner provided in the statute.

Section 2971 of the chapter relating to municipal corporations of the first class—the city of Louisville being one—provides in part, that:

"So much real, personal or mixed property in the city, which, from alienage, defect of heirs, failure of kindred, or other causes, shall escheat to the Commonwealth of Kentucky, shall vest in the board for the use and benefit of the schools. Said board (board of education) may, in the name of the Commonwealth, for the use and benefit of the public schools of the city, by its president, or other officer to be designated by it, enter upon and take possession of said property, or sue for and recover the same by an action at law or in equity, and without office found. The board may sell and convey any of such property by warranty deed or otherwise."

The validity of this last mentioned section is assailed by counsel for the Commonwealth upon the ground that it is unconstitutional for two reasons: First, because it is in violation of section 60 of the Constitution, providing that:

"The General Assembly shall not indirectly enact any special or local act by the repeal in part of a general act, or by exempting from the operation of a general act any city, town, district or county; but laws repealing local or special acts may be enacted. No law shall be enacted granting powers or privileges in any case where the granting of such powers or privileges shall have been provided for in a general law, nor where the courts have jurisdiction to grant the same or to give the relief asked for. * * * *"

And, second, because, although it is conceded that the estates of persons who die intestate without heirs escheat to the State, that the property or its proceeds so escheated should go into the State treasury for the benefit of the State at large, and it is not competent for the Legislature

to declare that property or its proceeds so escheated shall
be given to any specific fund or devoted to any particular
purpose. And so it is said that the escheator for the
Commonwealth under the general laws of the State, and
not the Board of Education in the city of Louisville, had
the right to assert claim to the property involved upon
the ground that it had escheated.

The argument is further made that there is no pro-
vision in the legislation relative to the escheat of prop-
erty for the benefit of schools in cities of the first class
whereby the heirs, if they should appear within the time
provided in the statute, can recover back the property
or its proceeds, if sold, although there is a provision in
the general laws relating to escheats that guards and
protects the rights of heirs and distributees and enables
them to recover the property or the proceeds if they are
entitled to it, although it may have been taken possession
of by the Commonwealth or covered into the State treas-
ury by proceedings instituted by an escheator on behalf
of the State.

In Bank of Louisville v. Board of Trustees of Public
Schools, 83 Ky., 219, the facts were these: The law then
in force being article one, chapter 36 of the General
Statutes, providing that all property, rights of property,
credits or moneys, held on deposit or otherwise, the last
known owner of which has not been heard of for eight
years, and has not exercised any act of ownership over
the same for eight years, should vest in the Common-
wealth without office found; and that the receipt of the
Auditor should be a full discharge or acquittance to the
person or depository surrendering the possession of the
property; and further, that property in the city of
Louisville subject to escheat should vest in the Board of
Trustees of the schools for the benefit of the schools.
It further provided that the State as well as the Board
of Trustees of the Public Schools should refund property
escheated to the person entitled to the same upon a
showing that such person was entitled to recover it as
heir of the decedent. The bank resisted the right of the
school board to recover the deposit, and in passing upon
the question the court—putting its decision upon the
ground that the act divested the bank as well as the
depositor of contract rights without giving either a sub-
stantial remedy for the recovery of the money in the
event heirs entitled to the same should present claim
to it—held the act invalid, saying in part:

"When a deposit is made in a bank a contract is created between the depositor and it, by which it acquires the right to retain, use and control the money, subject to be returned to its customer upon his demand. That moment a right vests in him to look to the bank, and to it alone, for repayment; and, upon the other hand, the bank is invested with the right to hold the deposit against all others. The law then existing becomes an integral part of the contract, and creates these vested rights. The act now in question divests both the bank of its right to hold the money, and the depositor of his right to it, because he has not been heard of for more than eight years, and vests it in the appellee."

It was, however, said in the course of the opinion that if the deposits belonged to the State, then it had a right to transfer them to the school board.

In the case of Louisville School Board v. Bank of Kentucky, 86 Ky., 150, the doctrine announced in the case of Bank of Louisville v. Board of Trustees, supra, was approved, and it was again held that the State had no power to divest persons of property to which they might be entitled under the law of escheat and require the rightful owners who sought to recover the same to look to school boards or other bodies for the recovery of their money, saying:

"When the money is paid into the treasury and becomes a part of the State's finances it may be disposed of under legislative authority when not in violation of the organic law; but to authorize a corporation or private citizen to sue for and recover of one in the rightful possession, that character of money or property, because it has no real owner, or on the presumption by reason of the lapse of time that no such owner exists, and to hold it as a gift from the State, leaving the bailee responsible to the real owner, if he should appear, and requiring both to look to the donee of the State for its value, is changing the legal status of the parties without their consent, and a character of legislation in plain violation of the Constitution."

As will be noted, these last two cases are rested upon the fact that the statute then under investigation changed the contract which then existed in law between the depositor and the bank, without the latter's consent, whereby the bank was left liable not only to the depositor whenever he might appear and demand his money, but took the money from the depository in the meantime, con-

trary to its contract to hold it until called for by the depositor. The first case arose upon an effort to escheat deposits in bank, some of which had been made as early as 1835, and during the intervening years down to 1862. The first statute enacted in this Commonwealth relating to escheats was passed in 1840. And the statute setting apart escheated estate lying in Louisville to the public schools of that city was adopted about 1851. Therefore, though it be conceded that the contracts between the banks and their depositors should have read into them the statute concerning escheats, so as to permit the bank to comply with such statute when the facts brought the case within its terms without liability to the depositor or his heirs, it would be so only as to those deposits made subsequent to the adoption of the statute. While the original statute concerning escheats allowed the rightful claimant at any time thereafter to present his claim to the Auditor and be reimbursed the amount the State had received for his property, yet the act concerning escheats in Louisvile gave the right to look to the city school board alone for reimbursement.

Concerning the constitutionality of the act under discussion in Louisville School Board v. Bank of Kentucky, supra, in the response to petition for rehearing, Chief Justice Pryor for the Court, said:

"No action can be prosecuted by the city schools against a stranger or a third party to recover property subject to escheat, because the property is held by the schools on the condition that the owner or bailee is to look alone to the trustees for indemnity. The contract rights of the parties are affected by such legislation, and it must, for that reason, present an insuperable barrier to the recovery, whether in the name of the board or in the name of the Commonwealth for their benefit."

The word stranger as there used meant one sustaining some contract relation to the former owner, such as bailee, for example.

The whole case, as well as the opinion of Bank of Louisville v. Board of Trustees, supra, was pitched upon the constitutionality of a statute which changed the contract between the depositor of money in a bank, and the depository, with respect to holding same and paying it back when demanded. In all other respects the act was held to be constitutional, and wherein not expressly so declared by the court, it is to be clearly inferred from

what was said, that no other objection than that pointed out in the opinion was found to exist.

In Bank of Louisville v. Board of Trustees of Public Schools, supra, the court held that absence for seven years, without being heard of, raised a presumption of death of the absentee, but did not create a presumption that he had died either without issue or without heirs. To meet that weakness in the statute the Legislature of 1893 adopted section 1609, Kentucky Statutes, providing:

"Whenever a person owning property lying or found in this Commonwealth is not known to be living for seven successive years, and no account whatever can be given of said owner, his heirs, devisees, or distributees, such person shall be presumed to have died without heirs, devisees, or distributees, and his property shall vest in the Commonwealth, subject to the right of said owner, his heirs, or devisees, to be reimbursed for said property whenever such claim is established as provided in this chapter."

It thus appears that the Legislature has endeavored to preserve the existing state of law on this subject, and has promptly endeavored to meet such objections to it as were pointed out by the court where they were curable. In none of the cases is the constitutionality of the statute on escheats made to turn on the fact whether the State had provided for reimbursing the rightful heir or owner afterward turning up. When such provision for reimbursement is made, it is a matter of grace.

In this country the policy on which is rested our statute of escheats is not so much a reverter to the original title holder, though that idea undoubtedly had its place in the adoption of the policy, but it is upon the right and power of the government, which is the sovereign, to possess property found within its jurisdiction for which there appears no owner. On this ground peculiarly rests the doctrine of escheats as applied to personalty. Property, the owner of which has died intestate and without heirs, whether it be personal or real property, would be the subject of controversy among such as might seek to grab it, without any right in any of them. It would, therefore, be a source of confusion and strife in the community. Or, if let alone, it would decay, or become waste and unproductive, whereas the interests of society required that it be used, and enjoyed. But it is equally important that it be enjoyed by the one entitled to it. Hence, when there is no original claimant, the property

is taken possession of by the State for the benefit of all. A convenient and sufficient name for the act is that given in the statute, "escheat." Whether or not people in this country hold property as a right conferred by the government, they hold its title subject to the reasonable and necessary regulation by government as to how title shall be vested and how and for what causes lost. It is then competent for the State to declare the public welfare to be that property within its borders shall not lie unclaimed for say eight years, and if it does, that that fact shall warrant the State in taking possession of it, and selling it so as to again bring it into a legal ownership, where it will serve the State and society by taxes and whatever productivity it may be susceptible of. The State may in its generosity, or sense of fairness, say that it will not in such case hold the proceeds against the original claimant, if he subsequently appears, and may provide for his reimbursement. It may do less. As by shortening the time in which it will make reimbursement, or it may exact conditions. In the instance here the State has declared that for escheated property which it dedicates to purposes of education, it will not make reimbursement. Rather, it fails to make provisions for it in such instances. It was in the competency of the State to so provide, or fail to provide as it saw fit. The policy is one of legislative discretion, and is not a condition precedent to the State's exercise of power.

In the nature of the case, escheat may operate, without inquisition or office found. (Stevenson v. Dunlap, 7 T. B. Mon., 134; Fry v. Smith, 2 Dana, 38; White v. White, 2 Met. 185.) Yet provision is made in the existing statutes for proceedings by the public escheator against the person in possession by publication. If it be true that one has died intestate, and without heirs, the owner of an estate in this Commonwealth, it would not be possible to proceed against his heirs, and unless there is some one who claims to be such heir, there is none to cite to appear and defend.

But the contention is rested here mainly upon the idea that the statute (section 2971, Ky. Stats.) is unconstitutional, because, as stated, it is a local and not a general law, whereas the Constitution forbids special legislation. It is to be observed that the Constitution does not prohibit legislation that is necessarily local in its application. On the contrary, it expressly allows it. (Subsection 29, section 59, Const.) Nor does it forbid

any legislation being of local application where every similar locality in the State is embraced by the act. Section 59 of the Constitution prohibits the Legislature from passing "local or special acts concerning any of the following subjects, or any of the following purposes." Then follow twenty-eight subjects forbidden, but none including the application of escheated property, or applications of public property or funds to any public purpose. The section ends with subsection 29, which reads:

"In all other cases where a general law can be made applicable, no special law shall be enacted."

This is a recognition of an obvious fact, namely, that there are many subjects of legislation to which the statute which may be enacted may apply alone.

Still the policy of the Constitution is not only to provide for general laws, but general laws of general application. That does not mean, for it could not be, that every statute must apply to every part of the State, and to every person alike within the State. It admits of necessary, and of reasonable classification of subjects and of territory. The Constitution itself provides for the classification of cities and towns. By clearest implication it allows that the governmental powers of each class of cities may be different from those of all other classes, and that all classes may have a different form of government with different powers from the government of rural communities, which includes the power and duty of school boards in such localities with respect to property therein. Yet there are some subjects which do not admit of classification based upon population and its density alone. Of such, a classification by cities would be repugnant to the Constitution. It may even be conceded for the purposes of this case, that the aid given the common schools by the State out of the public treasury must be on the same basis. But that is so because of section 185 and section 186 of the Constitution. Section 185 declares what shall constitute the school fund of the State. It does not embrace escheated property. Section 186 provides:

"Each county in the Commonwealth shall be entitled to its proportion of the school fund on its census of school children for each school year," and so forth.

But the Legislature is not prohibited from requiring or allowing certain localities, such as cities of the first class, to make additional provisions for educational purposes within their bounds. Nor is the question presented

whether it would be competent for the Legislature to make an additional appropriation of public funds in the treasury to the schools of any class of cities or counties.

Property subject to escheat, except certain corporate holdings named in the Constitution (section 192, Constitution) is so only because of the statute enacted by the Legislature. From the very beginning the Legislature has allowed such property to go to certain persons, or public purposes, within the locality where the escheated estate may be found. Since 1851 in Jefferson county, it has been given to educational purposes within that county. Under the statute of 1840 it was competent for the Auditor, and indeed was his duty, to grant the land to the widow of such intestate, if he left a widow. In this State the Legislature has declared that property subject to escheat may be recovered in two ways: One, where the property so subject lies or is found in cities of the first class, it may be recovered and appropriated by the School board of such city for purposes of public education in such city. The other, it may be recovered by the public escheator and paid into the treasury of the State. It is argued that as to property escheated outside of first class cities, all citizens get the benefit of it, whereas, as to that escheated within such cities they alone get the benefit. But the argument is no more sound than is the premise. Public support of certain eleemosynary institutions is allowed by law. They are but few in number, and are located in but three or four counties of the State. Nevertheless, those appropriations are not for "local purposes." The appropriations for administering justice are expended in the several counties for holding courts there. But justice, like education, wherever administered in the State, is for the benefit of the whole Commonwealth, and in truth does benefit the whole, in a broad and proper sense. The legislation now being criticised by the appellant in this appeal is of a class which has stood on the statute books for years. Public lands, that is, unappropriated or vacant lands, belong to the public. In the early part of the last century much of them was given in aid of particular academies. Even now what remains is given to the counties in which located, and when sold those counties alone enjoy directly the proceeds. Lands forfeited for taxes because not assessed for five years are given to the occupying claimant. The dog-tax is required to be assessed for each county separately. The surplus taxes in any county

must be applied alone for the public schools of that county. Certain fines and forfeitures under the penal and criminal statutes of the State are for the benefit of the public school fund of such counties. Many kinds of prosecutions and forfeitures inure to the benefit of the informer, by the provisions of the Statute. These illustrations are admittedly of little force in interpreting the statute in hand. Nevertheless, the power of the State to deal with escheated property should be and is no less flexible than in dealing with forfeitures, fines and public lands.

The State does not in fact give its property to the schools in Louisville. It is in no sense an appropriation by the State for schools of the city. The question is quite different. It is the State's granting to an executive board, an agency of the State, the power to reclaim property within the board's special territory which appears to be without an owner, or which is believed is abandoned, and to apply it, if recovered, to a public purpose in the locality where the property may be found or be located. Such property constitutes part of the bulk of the wealth of that locality. It is merely allowed by the statute to remain where found, and is applied to a proper public use. That the same provision is not made respecting other localities in the State, cannot vitiate the act in question, as it was for the Legislature to say whether the public welfare of such localities demanded such legislation. We held in Louisville School Board v. Chicago, St. Louis & New Orleans R. R. Co., 124 Ky., at page 511, that the statute now under investigation was not repugnant to section 60 of the Constitution, as being special legislation forbidden by that section, and upon a re-examination of the subject, we adhere to that opinion.

Finally, it is complained that the State has by the statute delegated some of its sovereign power to the school board to be exercised by it in its own behalf. It has. The board has no power but such as the State has delegated, and no rights save those given by the State. Whenever the State governs by the aid of such governmental agencies as executive boards, it must need to grant to them some of its own power, which as the sovereign it had the right to exercise itself, or otherwise. That is not only a legitimate grant, but necessarily so. It is quite different from the State's abdication of its

power in favor of a private person, or to any body not answerable to the public.

The judgment of the circuit court is affirmed.