TRUSTEES OF TRANSYLVANIA PRES-
BYTERY, U. S. A., INC., Appellant,

v.

GARRARD COUNTY BOARD OF
EDUCATION et al., Appellees.

GARRARD COUNTY BOARD OF EDUCA-
TION et al., Cross-Appellants,

v.

TRUSTEES OF TRANSYLVANIA PRES-
BYTERY, U. S. A., INC.,
Cross-Appellee.

Court of Appeals of Kentucky.

May 19, 1961.

Rehearing Denied Sept. 22, 1961.

Blakey Helm, Joseph B. Helm, Louisville, Samuel R. Cheek, Jr., Danville, for appellant and cross-appellee.

Gilbert M. Wilson, Edward P. Roark, Lancaster, for appellees and cross-appellants.

STEWART, Judge.

This is a suit for a declaration of rights to determine the ownership of two tracts of land totalling 43 acres located in Garrard County and to distribute the proceeds of the sale of both tracts according to such a determination.

On November 25, 1957, McKinley Day, plaintiff below, contracted to buy the 43 acres of land from the trustees of Transylvania Presbytery, U. S. A., Inc., appellant and cross-appellee herein, and hereinafter called "the trustees." Day brought this suit for a declaration of rights against the trustees and also named as a defendant Garrard County Board of Education, which was asserting ownership of the money representing the sale of the land. Hereinafter

this party, which is a cross-appellant and appellee, will be referred to as "the board." The county court of Garrard County, hereinafter mentioned as "the county court," also a cross-appellant and appellee herein, filed an intervening complaint, claiming title to the property on behalf of the common schools of the county, pursuant to KRS 273.130.

All the parties agreed the tracts should be conveyed to Day, with the question as to the ownership of the net proceeds of the sale amounting to $14,150 to be reserved for court decision; and deeds were made to Day by all the parties claiming an interest in the tracts. The land is made up of two parcels, a three-acre one called the church-house lot, which was sold for $2,700, and a 40-acre one immediately adjacent thereto, which was sold for $11,450. The trial court awarded the church-house-lot sale proceeds to the trustees and the amount received for the 40-acre tract to the board.

On this appeal, the trustees insist the lower court should have decreed them to be entitled to all the money, which would include the sale price of the 40-acre parcel, and on the cross-appeal the board and the county court contend they should have been adjudged the owners of the three-acre tract.

The Harmony Presbyterian Church, hereinafter referred to as "the church," was established in Garrard County prior to 1828. In that year it acquired the three-acre tract and built a church thereon. This church was and still is a part of the church organization called the Transylvania Presbytery. In 1849, the church purchased the 40-acre tract and the deed, dated October 12, 1849, was executed and delivered by John J. Welsh and his wife, Sally, parties of the first part, to Harold Smith and six others named therein and to their successors, as elders of the church, parties of the second part. The consideration was $1,200 paid in cash. The granting clause recited that the grantors "convey to sd. party of the second part, elders afsd. & their successors in the office & capacity of elders of afsd. Church."

the described land. The sentence then continues as the habendum clause, and we quote the exact language of the deed:

"* * * to have & to hold sd land in fee simple forever to sd Elders afsd & their successors in office, for the uses & purposes to-wit; to be held and occupied for the preacher or pastor of sd, Presbyterian Harmony Church, & sd land as a parsonage is to be forever held by sd. trustees & successors in the office for the time being, in trust for a residence for the stated minister as afsd. and for the further use & purpose, if at any time there is not any presbyterian church at sd. Harmony the benefits, profits, & proceeds of sd. tract is to be appropriated to the use of a common school at that place. The true intent of this conveyance being that sd. Elders as Trustees shall be invested with the legal title & their successors for the time being, always so to hold said place, that it shall be for the benefit of the presbyterian minister having charge aforsd. Church, & if at any time there is no such minister there, & as long as it is not used for the benefit afsd. school, * * *."

The trustees ordered the dissolution of the church in February, 1957, and directed its property to be sold. The reason the sale was prescribed was because the membership had decreased to the point that the church could no longer function. Accordingly, the sale was consummated. The trustees insist they are entitled to the proceeds of the sale as successors in title to the property under church law. The trial court found that by the terms of the Welsh deed, quoted above, the 40 acres or its proceeds were conveyed in trust and the church took, as beneficiary of the trust, a defeasible fee with a limitation over to the common schools upon the extinction of the church.

No school was ever built on the 40 acres. However, in 1851, the church erected a school building on the three-acre tract. It was taught by the pastor for a time and then the building was used as a public common school until 1890 when a school was established elsewhere in the community. The school building on the church property was removed and the students transferred to the new school. About 1914, all schools in the Harmony (now called Buena Vista) community were consolidated into the Buena Vista School under the control of the board. At the time this suit began, there had never been any buildings of any character on the 40-acre tract.

We shall first dispose of the cross-appeal which concerns the smaller parcel of ground. Cross-appellants and appellees, the board and the county court, point out that at the time the trustees took the action for the dissolution of the church there was no longer a church structure on the three-acre site or a congregation in that community in existence. Actually, the church had dwindled down until it comprised just two members. Therefore, as the church had ceased to function in fact, they maintain their right to the proceeds derived from the sale of this tract is upheld by KRS 273.130, which reads:

"If any religious society holding land dissolves, the title shall vest in the trustees of the county seminary in which the land lies for the use of that seminary; and if there is no such seminary, then in the county court, for the benefit of common schools in the county."

For reasons that we shall hereinafter discuss, we believe this contention is without merit.

The Harmony Presbyterian Church was a local unit of the Presbyterian Church in the United States of America. As a local unit of the latter it was not a self-governing body. The type of denominational structure we are dealing with was succinctly described in Thomas v. Lewis, 224 Ky. 307, 6 S.W.2d 255, 257, the opinion noting that in the Presbyterian Church the governing power is vested in an ascending series of judicatories called assemblies,

synods, presbyteries and sessions. See also Clay v. Crawford, 298 Ky. 654, 183 S.W.2d 797, for a somewhat elaborate discussion of the difference between the powers and authority of a local church of the congregational type of church government and one of the presbyterial form of church government, such as the latter is in this case.

It was stipulated that the church was set up, and thereafter continued to function, under the rules and discipline of the Presbyterian Church in the United States of America. This rule, which appears to be a controlling principle, was also stipulated:

"Whenever hereafter a particular church is formally dissolved by the presbytery or has become extinct by reason of the dispersal of its members, the abandonment of its work, or other causes, such property as it may have, both real and personal, shall be held, used, and applied for such uses, purposes, and trusts as the presbytery may direct, limit and appoint, or such property shall be sold or disposed of as the presbytery may direct, in conformity with the Constitution of the Presbyterian Church in the United States of America."

■■ The trustees argue that the cessation of a local church under the presbyterial form of government is not such a dissolution of a religious body as to cause its real estate to escheat under the conditions set forth in KRS 273.130. We believe this position is well taken. As the church was an affiliate of an encompassing religious society, not an autonomous religious congregation independent of higher authority, it does not fall under the provisions of KRS 273.130. A statute of escheat rests upon the right and power of the government to possess property within its jurisdiction for which there seems to be no owner. Commonwealth v. Thomas' Adm'r, 140 Ky. 789, 131 S.W. 797.

The church, under the system of church government just referred to, held the three

acres subject, upon its dissolution, to the uses and purposes of Transylvania Presbytery, including the latter's right to sell it. The title was impressed with a trust in favor of the higher authority which trust followed the fund when the property was sold. As to where the proceeds from the sale of the tract under discussion should go, this statement from 76 C.J.S. Religious Societies § 100, p. 890, appears to settle that point:

" * * * Where a church is organized in subordination to an incorporated general conference, whose charter provides that property of a church member which should become extinct should vest in the conference, the conference is entitled to the proceeds of the property of any extinct church member, and, where, under the church discipline, a superior judicatory is entitled to the proceeds of the property of extinct churches, it may direct the disposition of such property. * * * "

■ We therefore conclude the lower court correctly adjudicated the issue involving the question of ownership of the sale proceeds from the three-acre tract.

As to the 40-acre tract the lower court held that the deed affecting this acreage created a trust which did not fail when the church ceased to exist. In his findings of fact and conclusions of law the trial judge believed the "cy pres doctrine" applied under the circumstances; and he selected appellee, Garrard County Board of Education, as the substitute trustee to receive and administer the proceeds derived from the sale of the larger parcel. The money was directed to be expended for the use and benefit of the Buena Vista School, which is the school located nearest the church in what was formerly called the Harmony community. The trustees assert ownership of this fund because they contend the language of the deed did not set forth a condition as to the vesting of title but merely expressed a declaration of intended pur-

poses, the violation of which would not void the conveyance.

In determining whether the church was conveyed a fee-simple title or some type of defeasible fee, the criteria summarized in the Restatement of the Law of Property, Section 44, Note m., pages 129–130, which were approved by this Court in Scott County Board of Education v. Pepper, Ky., 311 S.W.2d 189, 190, are applicable. They are:

"When a limitation merely states the purpose for which the land is conveyed, such limitation usually does not indicate an intent to create an estate in fee simple which is to expire automatically upon the cessation of use for the purpose named. Additional facts, however, can cause such an intent to be found. Among the facts sufficient to have this result are clauses in other parts of the same instrument, the relation between the consideration paid for the conveyance and the market value of the land in question, and the situation under which the conveyance was obtained."

The 40-acre tract was sold to the church for $1,200; this was $30 per acre for land situated in a rural area. The sale was made for cash, payment of which was acknowledged. The price paid was presumably full market value 110 years ago. The granting clause states that the conveyance was made to the then *elders* and *their successors;* no reference was made to anyone other than these church officers, and no specific direction was given as to the use of the property in this clause. In the habendum clause it is recited that the land was to be held "in fee simple forever" by the elders and "their successors in office," and that they were "always so to hold said place." The purposes and uses to be made of it were: It was to be occupied or "lived on" by the pastor of the church. However, if a church ceased to exist at "Harmony," the benefits, profits and proceeds (this could be construed as income) from the tract were "to be appropriated to the use of the common school at that place."

The first conclusion we deduce from the language of the deed and the facts connected with its execution is that the grantors were not the donors of a charity for the uses and purposes we have referred to, but were the vendors of land in fee for a consideration paid. Consequently, there never could be a reverter of the estate to them or their heirs, although the uses and purposes mentioned should wholly fail. In Morrow v. Slaughter, 5 Bush 330, 68 Ky. 330, a woman conveyed for $800 a house and lot in Versailles to three individuals for the benefit of an organized "Presbyterian Church of the New School." She later brought an action claiming reversion of the property on the ground that the church had been dissolved. In deciding the case against her this Court said:

"* * * Had the appellee been the donor of a charity, a failure in the object of dedication would, by an implied trust, have resulted in a reversion to herself. But that is not her case. She did not give, but sold the property for an admitted valuable and a presumptively commensurable consideration, and her contract reserved no reversion to herself, but passed from her forever all her titles, as in all other sales, without condition or reservation. She can, therefore, have no reversionary title; nor can the Commonwealth have any such title, by escheat or otherwise."

See also Light et al. v. Third-Woodland Presbyterian Church, Inc., Ky., 311 S.W.2d 386, and Easum et al. v. Bohon et al., 180 Ky. 451, 202 S.W. 901, L.R.A.1918D, 1144.

The foregoing shows, as we believe, that the 1849 conveyance did not create a charitable trust. Nevertheless we recognize that a deed might contain a condition subsequent that would affect the title of the first grantee. As we have previously noted, the trial judge based his decision on his finding that the church had only a defeasible

fee with a limitation over to the common schools upon the disappearance of the church. Certainly, such a holding is inconsistent with the statements expressed in both the granting and the habendum clauses, which we have alluded to and which statements indicate a fee was conveyed. But the deed itself plainly suggests that the church desired the property for a parsonage, or for a school in connection with the church. It did start a school within two years, as has been mentioned, but upon the smaller tract.

The usual situation requiring a determination as to the existence of a condition is where the grantor, or his heirs, are claiming a right of reverter upon the grantee's failure to abide by a restriction. In the present case the board is not the grantor but a third party claiming to hold an executory or a contingent interest which right accrues upon the happening of a condition. However, whether the claimant be the grantor or a third party makes no difference as in both cases the right is based upon a determination of the fee upon the violation of a *condition*.

Conditions are created only by express terms or by clear implication; they will not be inferred from a mere declaration that a grant is made for a particular purpose. Williams et al. v. Johnson et al., 284 Ky. 23, 143 S.W.2d 738, 135 A.L.R. 1131. In order to arrive at the intent of the parties all reasonable doubt should be resolved against the construction that creates a condition. Wright & Taylor, Inc. v. Board of Education of Bullitt County, 151 Ky. 560, 152 S.W. 543. Furthermore, a condition will be more readily found by construction in a voluntary deed than in one involving a valuable consideration. Board of Councilmen, etc. v. Capital Hotel Co., 188 Ky. 754, 224 S.W. 197.

In applying the above rules of construction this Court has found language much stronger than that used in the deed before us to create covenants rather than conditions. In Carroll County Academy v. Trustees of Gallatin Academy, 104 Ky. 621, 47 S.W. 617, 618, the following language was held to impose a covenant, not a condition, a violation of which would not void the conveyance: "* * * on condition and in trust that they shall erect and put up a suitable building or buildings for a high school or seminary of learning, and that same shall always be devoted to school purposes." In Williams v. Johnson, cited above, a covenant, not a condition, was found to be the case where the deed stated: "* * * provided, nevertheless, that the said lots or parcels of land and every part thereof shall be applied to the special purpose of erecting a jail and Penitentiary House and other appendages thereon * * and for no other purpose whatsoever." [284 Ky. 23, 143 S.W.2d 738.]

The trial judge in his opinion in this case specifically classified the estate conveyed as a charitable trust. Proceeding from such a premise, he then discussed at considerable length the applicability of the cy pres doctrine to charitable gifts, quoting from several cases which recognized and enforced this doctrine. The trial judge took cognizance, as do the cases which he cited, that the cy pres doctrine really has limited application in this jurisdiction.

From a consideration of the language employed in this deed we find no intent to indicate the creation of a general charitable trust. The elders who purchased the property paid for it with money that must be presumed to have belonged to the church membership. Hardly can we read from this deed that a church board of elders contemplated setting up a plan that might, if the church became extinct, result in the use of the church's assets for general school purposes. In the only reference to the employment of this property for school purposes we find the deed stated that the funds should be for the "use of a common school at *that place*."

The wording of this deed might have been clearer, but the draftsman certainly put in as often as he could the fact

that this property was to be held and used by the elders and their successors *purely* for the benefit of the church. We are unable to read a condition into the language of the deed. Nor can we deduce from it that the cy pres doctrine applies. It is our opinion, from what has been shown, that the proceeds resulting from the sale of the 40-acre tract should be treated under the laws of the Presbyterian denomination as a fund available for church use elsewhere in the Transylvania Presbytery.

Wherefore, the judgment is reversed on the appeal and affirmed on the cross-appeal.