## Campbell County v. City of Newport.

(Decided March 20, 1917.

### Appeal from Campbell Circuit Court.

1. Infants—Juvenile Courts—Power of Legislature to Establish.— The legislature of the state has power to establish juvenile courts for counties as well as cities and to authorize the county and the city to levy a tax for the purpose of maintaining the court.

2. Infants—Juvenile Courts—Constitutional Law—Power of Legislature to Invest County With Authority to Tax City.—While the legislature may authorize counties to lay a tax on all the property in the county for the support of the juvenile court, it has no authority to confer on the county power to lay a separate or distinct tax on the property of cities within the county for the purpose of paying the expenses of the court, or to require a city to pay one-half of the expenses of the court.

3. Infants—Juvenile Courts—Payment of Expenses of—Power of Counties.—So much of section 331e of the Kentucky Statutes as authorizes counties to lay a special tax upon cities of the first and second class for the purpose of defraying the expenses of the court is unconstitutional.

4. Infants—Juvenile Courts—Expenses of—County Cannot Compel City to Pay One-half.—Under section 331a of the statutes the county may, out of its general fund collected from taxes throughout the county, pay the expenses of the juvenile court, but after

it has so paid the expenses; it cannot maintain an action against a city of the second class in the county to pay any part of such expenses.

5. Taxation—Constitutional Law—Power of Legislature to Tax Local Communities.—Under section 181a of the constitution the legislature has no power to levy a tax on local communities for local purposes, but may authorize such communities to tax themselves.

6. Constitutional Law—Power of Legislature to Delegate Its Taxing Authority.—The legislature cannot delegate its taxing authority to one political subdivision of the state, thereby investing it with power to levy a tax upon another political subdivision.

7. Constitutional Law—Taxation and Representation Must Go Together.—It is a fundamental and ancient principle in our governmental policy that taxation and representation must go together as nearly as practicable, and that each political subdivision or taxing district shall have the right to levy its own taxes, disburse its own public funds and select and pay its own officers.

8. Constitutional Law—Local Self-Government.—The principle of local self-government is firmly fixed in our institutions, and under it there is reposed in the people composing the local community the right to select their own officers, manage their own domestic affairs and raise their own taxes.

9. Taxation—Constitutional Law—Uniform Taxation.—Under section 171 of the constitution taxes must be uniform upon all property subject to taxation within the territorial limits of the authority levying the tax.

10. Taxation—Constitutional Law—Uniform Taxation—Double Taxation.—Taxation that is not uniform is necessarily unequal and amounts to double taxation, whether the lack of uniformity or the appearance of duplication is exhibited in the exemption of some property from the tax or in taxing twice for the same purpose a part of the property subject to the tax.

11. Taxation—Constitutional Law—Double Taxation Defined.—Double taxation means taxing twice for the same purpose in the same year some of the property in the territory in which the tax is laid without taxing all of it. If all the property in the territory upon which the tax is imposed is taxed twice for the same purpose and in the same year without discrimination or exemption, this is not double taxation.

BLAINE McLAUGHLIN for appellant.

BRENT SPENCE for appellee.

Opinion of the Court by Judge Carroll—Affirming.

Section 331e of the Kentucky Statutes provides that the county court in each county shall be a juvenile court, and that in counties having cities of the first and second

class, the county court may appoint one probation offi-
cer and one or more assistant probation officers, as
well as a stenographer, who shall each receive an annual
salary, within the limits prescribed by the statutes, to
be fixed by the county judge.

Subsection 21 of this section provides for the collec-
tion of a tax and the expenditure of public funds for the
purpose of defraying the expenses of the juvenile court,
and reads as follows: "For the purpose of paying sal-
aries and expenses provided for herein and necessary
to carry out the purposes of this act, the fiscal court of
each county containing a city of the first or second class
and the municipal board of said cities are authorized
and empowered to levy an annual tax of not less than
one-fourth of a cent on each one hundred dollars of all
taxables in their respective cities and counties.

"The sum derived from said taxation by the muni-
cipal board of said cities of the first and second class
may be turned over by said municipal boards to the
county treasurer of said respective counties to be dis-
bursed by him under orders of the fiscal court of said
respective counties for the purpose of paying salaries
and expenses as aforesaid. In case the fiscal court of
said counties containing a city of the first and second
class and the municipal boards of said cities shall fail
to levy a tax as aforesaid, the salaries and expenses
provided for herein shall be paid equally by the fiscal
court of said counties and the municipal boards of said
cities out of the county and city levy for general pur-
poses and in such event the municipal boards of said re-
spective cities may turn over to the county treasurer
their respective proportion of said salary and expenses
to be disbursed by said county treasurer under orders
of the fiscal court."

In 1915 Campbell county filed a petition against the
city of Newport, a city of the second class, situated in
Campbell county, in which was set out the appointment
of juvenile officers and a stenographer by the county
court of Campbell county for each of the years from
June, 1908, to July, 1915, inclusive. It further set out
that the salaries of these officers during these years had
been fixed at a sum stated in the petition, and within
the statutory limit, by the county judge of Campbell
county, and that all of the salaries so fixed, which
amounted to $23,000.00, had been paid by the fiscal court.

It further appears from the petition that no annual tax, or any special tax, was levied by the fiscal court for the purpose of paying these salaries, but they were paid out of the general funds in the custody of the fiscal court, which funds had been raised by taxes levied upon all the property in the county. It was also averred that the city council of Newport, or the commissioners of the city, had failed and refused to levy any tax upon the property in the city for the purpose of defraying the expenses of the juvenile court and that the city had refused to contribute anything to the payment of these expenses. Therefore, judgment was sought against the city for one-half of the amount paid by the fiscal court, viz.: $11,500.00.

A demurrer interposed by the city to this petition was sustained, and the county declining to plead further, the petition was dismissed, and the county brings the case here.

It will be observed that the juvenile court is a county institution, the county having full control and supervision of all matters connected with it and the right to appoint and fix the salaries of all officers employed in connection with its operation. The city authorities have nothing whatever to do with the management of this court. It will further be noticed that under subsection 21 the fiscal court of each county containing a city of the first or second class, and the municipal boards of such cities, are authorized to levy an annual property tax of not less than $\frac{1}{4}$ of a cent on all property in their respective cities and counties, and that the sum derived from any tax levied by the municipality must be turned over to the county treasurer to be disbursed by him under orders of the fiscal court.

This subsection also provides that if the municipal authorities and the fiscal court shall fail to levy the tax, the salaries and expenses of the court shall be paid equally by the fiscal court and municipal authorities out of county and city funds raised for general purposes, and that the city shall turn over to the county treasurer, to be disbursed under the orders of the fiscal court, its proportion of the expenses and salaries. In other words, each must pay one-half of the salaries and expenses. It is under this clause in subsection 21 that the fiscal court claims the right to exact from the city of Newport one-half of the salaries and expenses of the court, as no special tax was levied by either the fiscal court or the

city of Newport for the purpose of defraying the salaries and expenses of the court.

Whether the legislature had power to require the city authorities, after having raised a fund by taxation upon city property for the purposes of defraying the expenses of a juvenile court to turn this tax over to the county treasurer to be disbursed by him under orders of the fiscal court of the county, presents an interesting question that is not here directly involved, but closely related to it is the question, can the county compel the city to pay one-half of the expenses incurred by the county in the conduct of this court? And this question is expressly presented for decision. Indeed, it is the only question in the case and its disposition will require a consideration of the entire subject-matter of subsection 21.

That the legislature may authorize the establishment of juvenile courts has been settled in Marlowe v. Com., 142 Ky. 106; Cullins v. Williams, 156 Ky. 57, and Com. v. Yungblut, Judge, 159 Ky. 87.

Nor do we doubt the power of the legislature to authorize the fiscal courts to raise by a special tax imposed upon all the property in the county of Campbell, or to appropriate out of its general funds raised by county taxation, a sum sufficient to defray the expenses of this court, as the control and direction of the court and the appointment of administrative officers is lodged in the county authorities. It is equally plain, we think, that the legislature might authorize the establishment of such courts by city authorities and give the city the right to raise by a special tax imposed upon the property in the city, or appropriate out of its general funds raised by taxation, such sum as might be necessary to defray the expenses of the court, if the court and its officers were under the control of the city authorities.

But the theory on which this suit was brought is that authority for its maintenance is furnished by so much of subsection 21 as reads: "In case the fiscal court of said counties containing a city of the first and second class and the municipal boards of said cities shall fail to levy a tax as aforesaid, the salaries and expenses provided for herein shall be paid equally by the fiscal court of said counties and the municipal boards of said cities out of the county and city levy for general purposes, and in such event the municipal boards of said respective cities may turn over to the county treasurer their re-

spective proportion of said salary and expenses to be disbursed by said county treasurer under orders of the fiscal court." And if this part of the section is authorized by the constitution, the claim of the county must be sustained, or otherwise the section in so far as it requires the city to contribute a portion of its funds would have no effect. Therefore, the question is, did the legislature have power to invest the county with authority to compel the city to defray, out of funds raised by taxation for city purposes, a portion of the expense of conducting a court which is entirely under the control and supervision of the county authorities, and this, too, after the city as a part of the county has once been taxed for this purpose? Or, in other words, the right to give the county authorities power to tax the property located in the city for the purpose of raising funds to defray a part of the expense of this court? We say this because if the county can maintain an action like this and secure a judgment against the city, it would necessarily follow that it could compel the city authorities to levy a tax sufficient to satisfy the judgment, unless the city saw proper to pay the judgment out of a general fund raised by taxation, and if it did this the result would be precisely the same as if a special tax had been levied for the purpose of satisfying the judgment; so that looking at the matter from any viewpoint, the judgment must at last be satisfied with money raised by taxation imposed on the property in the city.

In considering this question it should be kept in mind that although the salaries and expenses of this court were paid by the fiscal court of the county out of its general fund, this general fund was created by a tax levied upon the property of the whole county, including of course, the property in the city of Newport. It, therefore, appears that the property in the city of Newport has already paid a part of the salaries and expenses of this court, and if this property in the city is now required to bear the burden of paying one-half of these salaries and expenses, it is obvious that the property in the city would be twice taxed for the same identical purpose and by the same identical authority, the fiscal court of Campbell county.

As the city authorities of Newport have no voice in determining the amount of salaries that should be paid or expenses incurred in the conduct of this court, or in the selection of its officers for whose benefit these salar-

ies were paid and expenses incurred, it would appear at first blush as a most extraordinary grant of power that the legislature attempted to confer on the county of Campbell when it gave it authority to in effect tax the city to pay one-half of the salaries and expenses of this office after it had once been taxed by the county to pay its proportionate part of them.

In support of this proposition counsel for the county argues that the legislature has authority to create separate or special tax districts within the limits of a county and to provide for the levy of a special tax in such districts.

The correctness of this proposition we have no disposition to question, because the legislature has ample power, often exercised, to create special districts comprising a part of a county for the purpose of promoting some public improvement from which the people and property in such special district may derive benefits applicable to that district alone, and to empower the people of the district to levy a tax for the purpose of defraying the expenses of this public improvement. Examples of this character of legislation are to be found in the creation of school districts, road districts, and perhaps other classes of districts that have been set apart and authorized to levy special taxes for special purposes peculiar to the district.

The concession, however, of this power to the legislature is far from conceding to it authority to confer on the fiscal court of a county power to levy a special tax or any tax on the property within a city for the purpose of defraying the salaries and expenses of officers appointed by and under the entire control and supervision of the fiscal court. If the fiscal court of Campbell county may levy a special tax on the property in the city of Newport for the purpose of defraying the expenses and salaries of the juvenile court, the county authorities could likewise be authorized by the legislature to levy a special tax upon the property in the city of Newport for the purpose of defraying, in whole or in part, the salaries and expenses incident to the conduct of other offices created by or under the control of the fiscal court or the county authorities, and the **result** would necessarily be that property owners in the city would find themselves subjected to taxation by taxing authorities selected by another and distinct political subdivision and the taxes they had paid administered

and disbursed by agencies not chosen by them and over whose conduct they could exercise no control.

To concede to the legislature power such as is here claimed, would recognize its right to violate the fundamental and ancient principle in our governmental policy that taxation and representation must go together as nearly as practicable, a rule that was laid down long before constitutional government was established and one that has never been seriously departed from, although it may not be found expressed in the words of any written constitution. The theory upon which our whole system of government rests is that each political subdivision or taxing district of the State shall have the right to levy its own taxes, disburse its own public funds, and select and pay its own officers without the interference of any other political subdivision, and to allow one political subdivision of the state, for example a city or county, to determine for another city or county what officers it should have or what salaries or compensation they should be paid or what taxes should be raised for the purpose of defraying the expenses of such officers, would be an intolerable, as well as an unheard of, burden to permit one taxing community to put on another taxing community. It is, we think, entirely beyond the power of the legislature to impose such a burden in such a manner on any taxing community without its consent. It would be taxation without representation in its most offensive form and entirely inconsistent with our whole scheme of local self-government. The principle of local self-government is firmly fixed in our institutions, and one of the chief advantages and privileges of such government is that there is reposed in the people composing it the right to choose their own officers, manage their own domestic affairs, and raise and disburse their own taxes. A thorough consideration of this subject may be found in People v. Common Council of Detroit, 28 Mich. 228, 15 Am. Rep. 202, in which Justice Cooley speaking for the court denied the legislature the power to thus interfere in local community concerns. Other cases expressing the same general views are: State v. Edwards, 42 Mont. 135, 22 A. & E. Ann. Cas. 1063; People v. Hurlbut, 24 Mich. 44, 9 Am. Rep. 103; Vallelly v. Board of Park Commissioners of Grand Forks, 16 N. D. 25, 15 L. R. A. (N. S.) 61.

It is, however, said in answer to these objections that in the administration and enforcement of the law relating to delinquent, homeless and dependent children, a large part of the expense incident thereto and the benefits derived therefrom are created by the social conditions that exist in the congested territories of cities. and, therefore, there is no injustice or inequality in requiring cities to bear a larger share of the expense attendant upon the establishment and operation of these juvenile courts than is imposed on the rural communities where the conditions are such that there is little necessity for the exercise of the authority of juvenile courts or the employment of probation officers.

But this argument does not meet or answer the objection that one municipal subdivision, for example a county, cannot levy a tax upon the property located in another municipal subdivision, for example a city, without its consent, or take the money raised by such a tax and use it in administering a department or office in the control of the authority imposing the tax. It will, of course, be readily admitted that social conditions in cities, and large cities especially, are so very different from those existing in rural districts that the uses and benefits of juvenile courts and probation officers are confined very largely to city districts, and many sound reasons might be found to justify a tax in cities to support these institutions. But this does not warrant the county in putting a special tax or a special burden on the city to support them.

The legislature, as we have said, has authority to provide for the establishment of juvenile courts in the county and the creation of probation officers to perform the duties incident to these courts, as well as to place in the hands of the county authorities the right to control the court, appoint the officers, fix their salaries, and levy a tax upon the property in the county to defray the expenses of the court and its officials. When this is done the property in the city must, of course, bear its equal share of the expense and burden in connection with property in other parts of the county. The legislature might also, if it saw proper to so do, provide, as we have said, for juvenile courts and probation officers to be appointed by city authorities and paid by special tax levied on the property in the city. But the legislature can not, as we think, empower the fiscal court with authority

to subject the property in the city to a special and extra tax for the purpose of defraying the expenses of a juvenile court that is purely a county institution, after the property in the city has once paid its fair share of the tax necessary to the conduct of this court.

The constitution has divided the cities of the state into classes, and the legislature in the exercise of its authority has enacted laws for the government of these several classes of cities and authorized them to adopt ordinances regulating their domestic affairs. These cities for governmental purposes are distinct political bodies whose powers are limited to the confines of the city, and no one would think it was within the competency of the legislature of the state to authorize or permit these cities to levy taxes upon property outside of the city limits for the purpose of establishing and conducting some city office from or through which the rural community might derive some benefit or for any other purpose, and yet there would be no difference between giving to cities this power and giving fiscal courts the power to impose on cities a distinct tax.

As illustrating the extent to which the constitution has committed to local political subdivisions the right to control for themselves the amount of tax they would levy and the purpose to which the funds so raised should be devoted, reference may be had to section 181a of the constitution, providing, in part: "The General Assembly shall not impose taxes for the purpose of any county, city, town or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect taxes." Under this section even the General Assembly is denied the right to impose taxes for the purposes of any local subdivision, and this being so, it is obvious that the General Assembly could not delegate to another and smaller political subdivision a greater power than was possessed by itself. The legislature under section 181a may exercise the authority expressly granted and confer on counties, cities, towns and other municipal corporations the power to assess and collect taxes for themselves, but it cannot delegate to one municipality or taxing district the power to tax another or confer on one political subdivision the authority to lay any kind of a burden upon another, unless the municipality or taxing district so burdened is a part of the territory in which the larger subdivision may levy a uniform tax.

In such cases the grant of power to the larger municipality to assess property and levy taxes within the territorial limits thereof includes of course its right to assess property and levy taxes in all parts of the territory, although there may be in such territory smaller municipalities or taxing districts. When, however, such a tax is laid, it must be uniform upon all the property in the territory levying the tax.

That the General Assembly, while having full power to authorize local communities to impose taxes on themselves for local purposes, may not itself exert this power by undertaking to levy a tax for local purposes, was held in McDonald v. City, 113 Ky. 425. In that case the legislature enacted a law directing cities of the first class to levy a tax for the purpose of maintaining a fireman's pension fund, whether such cities desired to do so or not, and in holding that the legislature had not the power to do this, the court said:

"Section 181 of the constitution was intended to take away from the General Assembly the power to impose taxes upon towns and cities, and to confer this power upon the local authorities. In the act in question they have not only imposed a tax upon the city of Louisville, but they also fix the levy and purpose to which the money is to be applied. No discretion is left in the council with regard to the matter. . . . . The constitution has taken from the General Assembly the power to impose taxes for purely local concerns, and whilst they can prescribe the purposes for which such taxes may be levied, and fix a maximum rate therefor, unless they are necessary for the maintenance of the municipality, or involve the interest of the general public outside of such municipality, their assessment and collection are left to the discretion of the local authorities."

This is a much stronger case against the asserted right of one taxing authority to impose upon another taxing authority without its consent the duty of levying a tax than is presented by the statute relating to juvenile courts. No constitutional authority can be found, even by indirection, that would justify the exertion of the power sought to be exercised by the fiscal court in the case we have. The attempt to confer this authority on fiscal courts is not only in contravention of the spirit of section 181a of the constitution and of the general

governmental principles that forbid one local authority to levy a special tax on another, but is in violation of section 171 of the constitution, which provides, in part: "Taxes shall be levied and collected for public purposes only. They shall be uniform upon all property subject to taxation within the territorial limits of the authority levying the tax." Here the authority levying the tax is the fiscal court of Campbell county and the territorial limits of its authority are the boundary lines of Campbell county. So that when the fiscal court undertakes to levy a property tax in that county, it must be uniform upon all property subject to taxation within the county. The fiscal court cannot exempt from the payment of the tax property in any part of the county, nor can it impose upon property in any part of the county a greater rate of taxation than is imposed upon all other property in the county. In other words, its power in the assessment and collection of taxes must be uniformly exercised upon all property within the county.

Taxation that is not uniform is necessarily unequal and amounts to double taxation, whether the lack of uniformity or the appearance of duplication is exhibited in the exemption of some property from the tax or in taxing twice for the same purpose a part of the property subject to the tax. Double taxation and lack of uniformity are each alike vicious and unjust and opposed to the principles of equality and fairness upon which the merit of our whole scheme of taxation depends.

In the present constitution there is a declaration that taxation must be uniform, but no direct prohibition against double taxation. But a prohibition against double taxation was hardly necessary, because there cannot be such a thing as double taxation where the taxation is uniform. Double taxation means taxing twice, for the same purpose, in the same year, some of the property in the territory in which the tax is laid without taxing all of it. If all the property in the territory upon which the tax is imposed is taxed twice and for the same purpose and in the same year without discrimination or exemption, this is not double taxation in the sense that such taxation is prohibited, because, within constitutional limits, if the tax is uniform, the amount of it is in the discretion of the taxing authorities and it may all be levied at one time or it may be the subject

of several levies. Uniformity in taxation and double taxation are wholly inconsistent. One cannot exist where the other is in force. And so if our constitutional scheme of uniform taxation is observed, there can be no double taxation. Cooley on Taxation, vol. 1, p. 394.

In this connection it is worthy of notice that while there was no command in our former constitutions that taxation should be uniform or prohibition against double taxation, these principles had become so deeply imbedded in the fundamentals of the law that the courts of this state, before the adoption of the present constitution, as well as since, have consistently held that taxation that lacked uniformity, or that was open to the objection that it was double taxation, was so obnoxious that it could not be sustained.

In the leading and often cited case of City of Lexington v. McQuillan's Heirs, 9 Dana, 513, in discussing the proposition that uniformity was necessary to the validity of any scheme of taxation, the court said: "An exact equalization of the burden of taxation is unattainable and *utopian*. But still there are well defined limits within which the practical equality of the constitution may be preserved, and which, therefore, should be deemed impassible barriers to legislative power. Taxation may not be universal, but it must be general and uniform. . . . .

"The distinction between constitutional taxation and the taxing of private property for public use by legislative will, may not be definable with perfect precision. But we are clearly of the opinion that whenever the property of a citizen shall be taken from him by the sovereign will and appropriated without his consent to the benefit of the public, the exaction should not be considered as a tax, unless similar contributions be made by that public itself, or shall be exacted rather by the same public will from such constituent members of the same community generally as own the same kind of property. Taxation and representation go together. And representative responsibility is one of the chief conservative principles of our form of government.

"When taxes are levied, therefore, they must be imposed on the public in whose name and for whose benefit they are required, and to whom those who impose them are responsible. And, although there may be a discrimination in the subjects of taxation, still persons in the

same class and property of the same kind must generally be subjected alike to the same common burden. This alone is taxation, according to our notion of constitutional taxation in Kentucky.

"The Commonwealth of Kentucky is subdivided into subordinate communities, or *quasi* corporations—as counties, cities and towns—each vested to a prescribed extent with certain local power to regulate its own peculiar concerns according to its own will. Lexington is thus possessed of this local sovereignty over its own streets and its own citizens as prescribed by its charter of incorporation, and so far as that charter is consistent with the supreme law of the land. When acting for itself, under the authority of its charter and the sanction of the constitution, the local public of Lexington should therefore, like the Commonwealth itself, be considered as a separate and independent body politic; and what we have said concerning the public, and its authority to impose taxes or apply private property to its own use, should, of course, be applied to the local public of Lexington as one entire and sovereign body acting for itself and on itself alone." To the same effect are: Preston v. Roberts, 12 Bush 570; C., N. O. & T. P. Ry. v. Com., 81 Ky. 492; Livingston v. City of Paducah, 80 Ky. 656.

Since the adoption of the present constitution in which the principle of these cases found expression, it has been many times written that uniformity in taxation must be observed and double taxation avoided. Thus in Cumberland Telephone Co. v. Hopkins, 121 Ky. 850, the court said: "But it is not the policy of the state to tax the same property twice as against the same owner. The constitution requires that taxes shall be uniform upon all property subject to taxation. (Section 171, Constitution). If the same property were taxed twice for the same purpose as against the same owner, whereas other property was taxed but once for that purpose as against its owner, the taxation would not be uniform. It would violate, not only the letter of the constitution, but that spirit and absolute equality before the law which is at the bottom of all free government."

And in Hager, Auditor v. Walker, 128 Ky. 1, the court said: "Section 171 authorizes the imposition of an *ad valorem* tax upon all the property in the state for state purposes, and in counties, cities, towns and

taxing districts for local purposes. This *ad valorem* property tax, whether imposed or levied for state, county, municipal, or local purposes, must be uniform within the territory in which it is imposed. If it be for state purposes, it must be exactly the same in all parts of the state; and uniformity must exist when it is authorized to be levied by local authorities for local purposes.''

And in Com. v. Walsh's Trustee, 133 Ky. 103, it was said: ''Throughout the whole scheme of taxation adopted by this state there is an evident purpose to avoid double taxation, not alone in not taxing the same property twice in the same year for the same purpose, but as well in not taxing the same thing, whatever its form, twice in the same year for the same purpose. Double taxation is recognized as oppressive, and, where it is imposed upon some classes of property and not upon others, works an inequality that is fundamentally vicious.''

If, however, the fiscal court of Campbell county, after it has raised by taxation in the county of Campbell, including, of course, the city of Newport and thereby put on the city its proportionate share of the expenses incurred in the maintenance of the juvenile court, which it had the power to and did do, may again compel the property in the city of Newport to bear the burden of one-half the expense of maintaining this court, or $11,500.00, as in this case, it is manifest that the fiscal court or the county court of Campbell county, it is not material which, would be in effect levying upon the property in the city of Newport a tax sufficient to raise the sum of $11,500.00, no part of which sum would be raised by taxation on property situated outside the corporate limits of the city.

To permit the fiscal court of Campbell county to impose this additional burden on property situated in the city of Newport alone, would clearly be a violation of section 171 of the constitution, which, as we have seen, provides that taxes must be ''uniform upon all property subject to taxation within the territorial limits of the authority levying the tax,'' because the territorial limits of its taxing power is the whole county of Campbell, and yet it seeks to exert this power on a part of the county while exempting the remainder from the burden. In addition to this, it would be authorizing the

double taxation of the property in the city of Newport, because this property has heretofore paid, under the levy made by the fiscal court upon the property of the whole county, its proportionate share of this expense.

We are, therefore, of the opinion that the judgment of the lower court dismissing the suit of Campbell county was correct, first, because the suit was an attempt on the part of Campbell county to impose a tax on the property of the citizens of Newport without their consent, and, second, because it was an attempt to lay a tax on a part of the property of the county while exempting other like property in the county from the payment of the tax.

Wherefore, the judgment dismissing the suit of Campbell county is affirmed.