## Connors, Jailer, et al. v. Jefferson County Fiscal Court et al.

Dec. 13, 1938.

As Modified on Denial of Rehearing Feb. 28, 1939.

JAMES GARNETT, Judge

HUBERT MEREDITH, Attorney General, A. E. FUNK, Assistant Attorney General, and RICHARD PRIEST DIETZMAN for appellants.

LAURENCE S. GRAUMAN, County Attorney, HAL WILLIAMS, City Attorney, and ROBERT L. SLOSS for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming in part and reversing in part.

The General Assembly of Kentucky at its first extraordinary session in 1938 passed an act (see Acts of 1938, First Session Extraordinary, Chapter 19, Sections 1 and 3, Kentucky Statutes, Baldwin's 1938 Service, Sections 2237a-4, 2237a-6) providing that in counties having a population of 150,000 or more the jailer thereof may appoint a physician to the jail of such county, it being made the duty of such physician to attend upon and prescribe for all persons who may be confined in jail by order of court. The act fixed the salary of the jail physician at $2400 per annum to be paid by the county, but provided in counties in which there is a city having a separate government the county may require the city to pay its pro rata part of the physician's sal-

ary. This act repealed an act of 1898, Kentucky Statutes, 1936 edition, Sections 2237a-1, 2237a-3, which was practically identical with the new act except that in the former the county judge and justices of the peace appointed the physician to the jail and the annual salary of the physician was fixed at $1500.

At the same extraordinary session of 1938 the General Assembly by Chapter 20 of its act provided for the appointment of a jail or police matron and two assistant matrons by the jailer where the county jail was located in a city of the first class, Sections 2877a-15 to 2877a-28, Kentucky Statutes, Baldwin's 1938 Service. This act provides that such matron and her assistants shall care for and have supervision over female prisoners in the jail and fixes the salary of each at $100 per month to be paid by the county in which the jail is located. This act supersedes and repeals the act of 1912 (Kentucky Statutes, 1936 edition, Sections 2877a-1 to 2877a-14) which was in all respects identical except that it only provided for the appointment of a matron and one assistant at a salary of $75 per month and reposed the appointive power in different authorities.

Jefferson county, which has a population of over 150,000, and in which Louisville, a city of the first class, is located, by and through its fiscal court instituted this action against Martin J. Connors, the jailer of that county, the jail physician, the police matron and assistant matrons appointed by the jailer, and the city of Louisville alleging that for reasons hereinafter set out both of the acts of 1938 were unconstitutional and violative of Sections 59, 60, 106, 171, 180 and 181a of the Constitution of Kentucky. They prayed for a declaration of rights between the parties.

By answer the defendants traversed the allegations of the petition and alleged that under the acts repealed and superseded by the acts under attack the county every year while such acts were in force paid the salary of the physician at the jail and of the jail matrons and at no time ever raised the question of the constitutionality of the acts until the acts of 1938 were passed; that by reason of such long continued acquiescence the county and the fiscal court are now estopped to claim that there is no reasonable basis for the classification made by the acts and that by contemporaneous construction extending over such long period of time the constitution

had been construed to mean that Jefferson county be compelled to pay the salary of the jail physicians and the matrons.

By way of counterclaim they asked that in the event the acts of 1938 be declared unconstitutional that the acts which they repealed be construed as to whether they are constitutional or unconstitutional. The court sustained a demurrer to the paragraphs of the answer setting up the affirmative defenses and defendants declining to further plead it was adjudged that both of the acts of 1938 were in all respects valid and constitutional except so much thereof as required the county to pay the compensation or salary of the physician to the jail and matron and assistant matrons and adjudged that such salary and compensation should be paid as deputies to the jailer are paid under Section 106 of the Constitution. The court declined to make any declaration under the counterclaim of defendants as to the constitutionality of the acts repealed by the acts of 1938. Defendants are appealing.

Controversy is made in briefs as to whether the appellate court on review is confined to a consideration of the constitutionality of the Act of 1938 under Section 106 of the Constitution. It is true that in the opinion of the chancellor reference is made only to Section 106 of the Constitution, but it will be noted that the judgment holds the act in all respects valid and constitutional except in the particulars above indicated. In the circumstances we are inclined to disregard the doubtful and technical question raised and consider briefly every ground of attack made by appellant upon the constitutionality of the acts.

Section 106 of the Constitution reads:

"The fees of county offices shall be regulated by law. In counties or cities having a population of seventy-five thousand or more, the clerks of the respective courts thereof (except the clerk of the city court), the marshals, the sheriffs and the jailers, shall be paid out of the state treasury, by salary to be fixed by law, the salaries of said officers and of their deputies and necessary office expenses not to exceed seventy-five per centum (75%), of the fees collected by said officers, respectively, and paid into the treasury."

It is the contention of the appellees as is alleged in the petition that the physician to the jail and the matrons are deputies or that their salaries are "necessary office expenses," within the meaning of Section 106 of the Constitution and should be paid out of the 75 per cent. of the fees collected by the jailer and turned over to the state treasurer as therein required. Of course counsel for appellants maintain otherwise and argue that the physician to the jail and the matrons are not deputies within the meaning of the Constitution and cite authorities, including Kentucky cases, to the effect that a deputy of an officer is one having power to do every act which the principal might do. One of the late Kentucky cases cited is Knuckles v. Board of Education of Bell County, 272 Ky. 431, 114 S. W. (2d) 511. While that case recognizes the general doctrine contended for by appellants, it points out at least one exception thereto. However, and to say the least, a deputy of an officer is necessarily one having power and authority to discharge some of the official duties of the principal. The act providing for the appointment of a physician to the jail and defining his duties imposes upon him no official duty which is imposed by law upon the jailer. It is therefore apparent that no reasonable construction could be placed on Section 106 of the Constitution that would include the physician to the jail as a deputy of the jailer. It is also equally manifest that the salary of the physician to the jail may not be classed as "necessary office expenses" as used in that section since it bears no relation whatever to the discharge of the duties imposed by law upon the jailer. "Necessary office expenses" as used in that section clearly refers to expenses incident and necessary to proper conduct of the duties of the office other than the salary of deputies. See Coleman v. Mulligan, 234 Ky. 691, 28 S. W. (2d) 980.

When we come to a consideration of the act providing for the appointment of the police matron and her assistants, an entirely different situation is presented. Under that act the matron and her assistants perform practically every duty required of the jailer in so far as the handling of female prisoners is concerned and it is our conclusion that they properly may and should be treated as deputies within the meaning of Section 106 of the Constitution.

It is further contended by counsel for appellees that

the acts violate Section 171 of the Constitution because they impose double taxation or at least impose a burden of taxation on Jefferson county which is unequal as between it and the other counties of the Commonwealth and is contrary to the uniformity and equality in levying of taxes as guaranteed by that section; that they violate Sections 180 and 181a of the Constitution in that it is an attempted appropriation by the state of funds of Jefferson county levied by the fiscal court and collected for other definite and specific county purposes; and also that they violate subsection 29 of Section 59 and also Section 60 of the Constitution in that they are special laws made applicable where a general law would suffice and that they are special and local acts which repeal in part a general act. All of these contentions may be properly treated together. Since, as we have concluded, the jail matron and her assistants are deputies within the meaning of Section 106 of the Constitution and the county of Jefferson will not be obligated to pay the salary of the matron and her assistants, it is not in position to press some of the grounds of attack upon that act.

In their final analysis all of these contentions come down to a question of classification and it is a doctrine of universal application that classification based on population of political subdivisions is permissible if rested on a reasonable basis and not a mere arbitrary division. The classification made by these acts bears a reasonable relation to the result sought to be accomplished and operates equally and alike on all persons in the same circumstances and conditions. They relate to every county having or that may have a population of over 150,000 and to all counties that have or may have within them cities of the first class. Necessarily there is a greater need for a physician to the jail and for jail matrons in counties having such a large population than in the less densely populated counties. Laws which operate in the same manner on all persons in like circumstances are not special or local laws. While an act making arbitrary and unreasonable classification of counties, cities or other political subdivisions for the purpose of making laws applicable to them alone will not be upheld, Droege v. McInerney, 120 Ky. 796, 87 S. W. 1085, 27 Ky. Law Rep. 1137, cities may be classified according to population for the purpose of making laws applicable to them and an act applying to counties hav-

ing a designated population or containing cities having a designated population may be the subject of legislation without violating the Constitution. Johnson v. City of Fulton, 121 Ky. 594, 89 S. W. 672, 28 Ky. Law Rep. 569; Commonwealth v. Thomas' Adm'r, 140 Ky. 789, 131 S. W. 797. In Herold v. Talbott, Auditor, 261 Ky. 634, 88 S. W. (2d) 303, it was held that an act fixing the compensation of officers in counties having a designated population was not a special or local act forbidden by the Constitution. See, also, Jones v. Russell, 224 Ky. 390, 6 S. W. (2d) 460. We unhesitatingly conclude that the acts are not local or special but apply alike to all who come within their purview; that the classification is reasonable and well founded and there is no reasonable basis for a contention of discrimination or of inequality in levying and collecting taxes as against Jefferson county because it falls into a class to which an act will be applicable nor is any appropriation by the state of county funds involved. It follows that the chancellor's finding with respect to the act relating to the police matron and her assistants is correct but is erroneous as to the act relating to the physician to the jail in so far as that act is held to be violative of Section 106 of the Constitution.

Appellants' defense of estoppel and contemporaneous construction cannot be sustained. Section 106 of the Constitution is clear, unambiguous and leaves no doubt as to its meaning and purposes, or the abuses which it was intended to prohibit.

"Plain and unambiguous constitutional provisions cannot be varied by legislative, executive, or departmental construction. There is no room for construction of a Constitution outside of the words themselves, if they are unambiguous, and the rule as to the authority of contemporaneous exposition are unimportant in such cases. The construction placed upon a constitutional provision by the legislative and executive branches of the government will not be permitted to overturn and render nugatory a clear provision of the Constitution, in cases where the meaning of a clause in the instrument is capable of two interpretations." 11 Am. Jur., Section 78, pages 698 and 699.

As between the county and the city of Louisville, it is argued by the city that if the physician to the jail

is not a deputy within the purview of Section 106 of the Constitution and to be paid as therein provided, then that part of the act providing that in counties in`which there is a city having a separate government, the county may require the city to pay its pro rata part of the physician's salary, creates double taxation against the city and presents a case of taxation without representation and destroys uniformity, contrary to Sections 171, 181 and 181a of the constitution. The case of Campbell County v. City of Newport, 174 Ky. 712, 193 S. W. 1, L. R. A. 1917D, 791, is cited as directly in point and controlling. In that case the court had for consideration a provision in the juvenile court law that the expenses of such court would be paid equally by the fiscal court of the county and the municipal boards of a city of the first or second class in the county. The court held in effect that the juvenile court was a county institution; that if the city was required to bear equally the costs of the court it would be taxed twice for that purpose since cities paid county taxes along with other parts of the county. Juvenile delinquents from the city and from the county outside of the city are dealt with by the same court under the same law. But this case presents an entirely different situation. The city of Louisville, it is true, does pay county taxes for the maintenance of the county jail and keeping county prisoners confined for violation of state laws, but under Section 2228, Kentucky Statutes, the city has a right to and we assume does use the jail for confinement of persons committed for violation of laws or ordinances of the city by paying the fees allowed by law. To that extent and for the purposes indicated the jail becomes a city institution and the costs incident to keeping prisoners confined for violation of city ordinances and laws is to be borne by the city. If the city does confine such prisoners in the county jail it may and should be required to pay its pro rata part of the jail physician's salary.

Wherefore, the judgment is affirmed in part and reversed in part with directions to enter judgment in conformity with this opinion.

Whole Court sitting.