## City of Paducah v. McCracken County et al.

October 10, 1947.

Joe L. Price, Judge.

Adrian H. Terrell for appellant.

Wheeler, Marshall & Shelbourne for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The City of Paducah, a city of the second class, brought an action against McCracken County, the McCracken Fiscal Court and its members under section 639a—1 et seq. of the Civil Code of Practice. In its petition it prayed ''for a declaration of the rights and duties of the plaintiff and the Fiscal Court of McCrack-

en County, with respect to the responsibility and legal liability for the care, maintenance and treatment of the sick and poor residing within the corporate limits of the City of Paducah, and for a declaration as to whether it is the legal obligation and duty of the plaintiff or the legal obligation and duty of the defendants to provide funds for the purpose of defraying the expense for the maintenance, medical treatment and hospitalization required by charity patients who reside in the city.'' The defendants filed a general demurrer, and, without waiving the demurrer, an answer in five paragraphs. It is difficult to determine from the pleadings the precise controversy between the parties, but the city in its brief states that the only issue to be decided ''is whether or not it is the legal duty of the Fiscal Court of McCracken County, Kentucky, to provide all of the care, treatment and maintenance for the sick and poor in the entire county, including the sick and poor who reside within the corporate limits of the City of Paducah.'' In the brief for the county the question for decision is posed as follows: ''We believe the question to be, as presented by the pleadings, whether or not the County can be required to appropriate an amount to be ascertained by the City to provide medical services in the City Hospital for the poor of the County.''

It appears from the pleadings that the City of Paducah established a municipal hospital known as ''Riverside Hospital'' in 1938, and issued $100,000 principal amount of 4% revenue bonds. These bonds were canceled in 1940, and the city issued a series of hospital revenue bonds in the principal amount of $150,000 bearing interest at the rate of 3¾%. The indebtedness was refunded from time to time, and at present there are outstanding $111,000 of hospital revenue bonds bearing 2% interest. It appears that the city expended $35,220 in 1945 for charitable purposes, including the sum of $16,723 paid to Riverside Hospital for the care of charity patients, while the county during its last fiscal year provided in its budget for the expenditure of $33,330 out of its general fund for the maintenance of the County Health Department and the poor farm and for the care, treatment and maintenance of the sick and poor of the county. One of the items in the budget is ''Charity Hospitalization $1,500,'' and another ''Miscellaneous

Charity $2,400." The chief controversy between the city and county authorities seems to center around the hospitalization of the indigent sick who are residents of the city and also whose duty it is to bear the expense. Apparently the city has been carrying most, if not all, of this burden. Appellants cite City of Richmond v. Madison County Fiscal Court, 290 Ky. 293, 161 S. W. 2d 58, 61, in support of its contention that the legal duty of providing for the care, treatment and maintenance of the sick and poor in the entire county, including the sick and poor of a city located in the county, is imposed upon the fiscal court, and the city, although authorized to make contributions for the maintenance of charity, is not required by law to do so. It relies particularly upon the concluding portion of the opinion, which reads: "The duty of providing for the care, treatment, and maintenance of the sick and poor of the entire county is imposed upon the fiscal court, Kentucky Statutes, section 1840 (KRS 67.080), Leslie County v. Keith, 227 Ky. 663, 13 S. W. 2d 1012, and aid should be furnished without discrimination because of the recipient's place of residence within the county. What has been said does not prevent the city from supplementing out of its own funds the aid and assistance given by the county to the poor and indigent sick who reside within the corporate limits of the city. Kentucky Statutes, sections 3490-6 and 3490-22."

In City of Richmond v. Madison County Fiscal Court, the county sued the city to recover one-half of the sum spent by the county for the care and maintenance of poor persons who resided within the corporate limits of the city. The county relied upon section 1851 of the Kentucky Statutes, but it was pointed out in the opinion that section 1851 had no application to Madison County. That section has been omitted from the Kentucky Revised Statutes because there is now no county in the state to which it applies. See Notes and Annotations to the Kentucky Revised Statutes, section 67.040. It was said in the opinion that the expenditures made by the fiscal court of Madison County for the care, maintenance and hospitalization of the poor of the entire county had been made from taxes paid on property located both in the City of Richmond and in the county outside the city, and that, the residents of the City of

Richmond having paid their proportionate part of this expense when they paid their county taxes into the county treasury, the city could not be required to reimburse the county for any part of the amount which had been paid for the care and hospitalization of the poor and sick who resided within the corporate limits of the city. This was the only question before the court in the City of Richmond case.

We find little difference in the Statutes with respect to the obligations of the counties and cities to the poor and sick. The Legislature has recognized that an obligation rests upon both the county and the city. KRS 204.010 provides ''(1) The fiscal courts shall provide for the support of the paupers of their respective counties,'' and KRS 67.080 provides ''The fiscal court may * * * make provision for the maintenance of the poor, provide a poorhouse and poor farm, appropriate county funds for the benefit of infirmaries for the sick located in the county, provide for the care, treatment and maintenance of the sick and poor and provide a hospital for that purpose, or contract with any hospital in the county to do so.'' KRS 84.210 provides that the general council of a city of the second class may, by ordinance, ''Establish and maintain public hospitals within or without the city, and condemn property or contract with others for that purpose,'' and KRS 84.260 provides that the general council may, by ordinance, ''Make suitable provision for the maintenance and support of poor persons.'' We think that the primary duty to care for the poor and sick rests on the county, and that this duty is not limited to those unfortunates who reside in the county outside the corporate limits of a city, but the city also has a duty in this respect. It is a matter of common knowledge that in a county containing a city of the second class a larger proportion of its indigent citizens reside in the city than in the unincorporated sections of the county. Because of its limited taxing power, a county is unable to make adequate provision for the care and maintenance of all poor persons and to hospitalize all indigent sick persons from the entire county. However, the appellee county should not, as indicated in the pleadings, disclaim all responsibility for the hospitalization of the indigent sick who are residents of the City of Paducah merely because of the fortuitous circumstance

that the city has constructed and is now operating a municipal hospital.

The appellant's chief complaint of the lower court's judgment is that it failed to declare that it is the legal duty of the Fiscal Court of McCracken County to provide all the care, treatment and maintenance of the sick and poor in the entire county, including the sick and poor who reside within the corporate limits of the City of Paducah. The court did hold, and properly so, that the Statutes placed upon the county the duty of supporting the poor of both city and county, but subject to the county's ability to pay. The court adjudged that it was without authority to say how much or what proportion the city should pay toward the maintenance of its poor or how much the county should pay or how much it should apportion for the maintenance of the poor of the county. The court filed a written opinion, which was made a part of the judgment, and we adopt the concluding part of the opinion, which reads:

"From the exhibits filed I am convinced the county cannot carry on the expenses necessary and incident to caring for the poor of the entire county and city. But for me to say just how much or what proportion the city should contribute would be in direct conflict with the opinion of the Court of Appeals in the case of City of Richmond v. Madison County decided in 1942 in 290 Ky. 293, 161 S. W. 2d 58.

"The Legislature in 1944 by Section KRS 212.640 and following, enacted a law providing for a City-County Health Department in counties containing a city of the second class, by which both the city and county jointly share, according to agreement between them, the expense of building and maintaining said Department. It seems to me the city and county should in some such way as provided therein agree upon the amount each should pay for the maintenance of the poor of the city. There does not appear to be any other solution to the situation.

"I am sure both the city and county want to do their duty toward the people in distress. Likewise the officers want to be fair with the people they represent.

"Taking into consideration the emergencies that

may arise; the discretion that must of necessity be lodged with the city and county commissioners in their duties; the fact that this court cannot determine the ability of each or either the city or county to pay as time goes on; the fact that certain appropriations are permissible and others mandatory; and that the Circuit Court is without authority to say how much or what proportion a city should pay toward the maintenance of its poor, I do not find it possible to lay down a hard and fast rule to be followed.

"I suggest the commissioners of both the city and county meet in joint session and agree upon the amounts that each should pay. If such effort does not attain the desired end, then the Legislature should be called upon to enact a law that will clearly fix the proportionate responsibility of the city and county."

Judgment affirmed.