**CITY OF LEXINGTON, a Municipal Corporation, et al., Appellants,**

v.

**Chester HAGER et al., Appellees.**

Court of Appeals of Kentucky.

May 27, 1960.

Rehearing Denied Aug. 12, 1960.

28

Foster Ockerman, John R. Cook, Jr., Lexington, for appellants.

Scott Reed, Wallace, Turner & Reed, Armand Angelucci, Lexington, for appellees.

CULLEN, Commissioner.

This appeal is from a declaratory judgment upholding the constitutionality of an Act of the 1956 General Assembly (1956, c. 143; KRS 64.185) which prescribes a schedule of minimum salaries to be paid to coroners by their counties (the amounts being graduated according to county population), and which further provides that in any county containing a city of 50,000 population or more the city must pay the coroner a supplementary salary at least equal to the minimum prescribed to be paid by the county. The City of Lexington (which has a population in excess of 50,-000) refused to pay to the Fayette County coroner the supplemental salary of $150 per month required by the statute, whereupon the coroner brought this action seeking a declaration of rights. The appeal is by the city and its mayor, commissioners and city manager.

Since by Section 99 of the Kentucky Constitution the coroner is designated a *county* officer, a first blush impression would be that of course a *city* should not be required to pay any of his compensation. But the question is whether there is any *constitutional* prohibition against such a requirement. We have come to the conclusion that there is such a prohibition in the clause of Section 171 of the Kentucky Constitution prescribing that "Taxes shall be levied and collected for public purposes only."

The plain meaning of the foregoing clause is that taxes may be levied and collected only for a public purpose of *the particular tax levying unit*. See Dyche v. City of London, Ky., 288 S.W.2d 648. Clearly, Fayette County could not use its tax money to help pay for a courthouse in Knox County, nor could the city of Lexington spend city funds to supplement the salary of the mayor of Paducah, because these purposes would not be public purposes of Fayette County or the City of Lexington.

It might be argued, however, that since the coroner of Fayette County renders some of his services within the geographic limits of the City of Lexington, the performance of his services does serve a public purpose of the city. We think the answer to this argument is that the services do not perform a function of or for the city as a *political* unit.

Under our system of government counties and cities are established as local governmental units or political subdivisions with the dual purpose of performing purely local functions and of serving as arms of the state government in the local administration of various state functions. See Furlong v. Darnaby, 206 Ky. 63, 257 S.W. 707; Duke v. Boyd County, 225 Ky. 112, 7 S.W.2d 839. Each is given a limited power of taxation, under Sections 157 and 171 of the Kentucky Constitution.

In a number of instances there may be an overlapping or duplication of the fields or areas of functions of a county and the cities within it. See City of Paducah v. McCracken County, 305 Ky. 539, 204 S.W. 2d 942; City of Richmond v. Madison County Fiscal Court, 290 Ky. 293, 161 S.W. 2d 58. In those instances they may work out between themselves a suitable division or apportionment of responsibilities, as was suggested in the City of Paducah case, supra, or provision may be made for a cooperative or joint operation, as in Hunter v. City of Louisville, 199 Ky. 834, 252 S.W. 119, and Fox v. Board of Louisville & Jefferson County Children's Home, 244 Ky. 1,

50 S.W.2d 67, and as is the case with city-county airports, health departments, and zoning.

Where, however, an agency particularly and specifically established, controlled and operated as a county agency exists for the purpose of carrying on the county's functions in a particular field, a city in the county cannot be compelled to contribute financial support to that agency even though the city itself would have the right or even the duty to carry on functions in that field. Campbell County v. City of Newport, 174 Ky. 712, 193 S.W. 1, L.R.A. 1917D, 791; District Board, etc. v. City of Lexington, 227 Ky. 7, 12 S.W.2d 348. The reason is that in such a case the service rendered by the county agency is not identified or related to the city as a political unit in such a way that it may be considered to accomplish a public purpose of the city. The county is carrying on a strictly county function, and the mere fact that the city might itself engage in a similar function does not justify use of the city tax funds to support the county function.

A different situation exists where the city pays the county for services by a county agency that fulfill a primary and direct obligation of the city. So, in Connors v. Jefferson County Fiscal Court, 277 Ky. 23, 125 S.W.2d 206, this Court upheld a statute requiring a city of the first class, which used the county jail for confinement of persons committed for violation of city ordinances, to pay a pro rata part of the salary of the county jail physician. The Court pointed out that the jail, through its use by the city, became in effect a city institution. In substance, the city was merely choosing the county jail as an instrument for carrying out a purely city function.

A distinction perhaps may be found also in those situations where the city pays a *fee* for a specific service of a county officer that is related in some direct way to the city. Two cases, of special significance to the question now before us, may be con-sidered to fall in this category. They are Whittenberg v. City of Louisville, 238 Ky. 117, 36 S.W.2d 853, and City of Louisville v. Keaney, 267 Ky. 557, 102 S.W.2d 996. In those cases the Court upheld a former statute requiring a city of over 30,000 population to pay the coroner's *fee* of $12 for holding an inquest over an unburied body in the city. Actually, the only contention advanced in those cases was that the statute imposed "double taxation" or non-uniform taxation upon the people of the city, but in rejecting that contention the Court pointed out that "in no instance does it (the city) pay twice for a single act," [238 Ky. 117, 36 S.W.2d 855] thus classifying the statute as one providing simply for payment for specific acts of service. Had the point been raised that the service was not rendered to the city as a *political* unit and was not a service which the city itself otherwise would have been required to perform, the Court would have been required to answer the question of whether the rendering of the service was a public purpose of the city, and perhaps might have reached a different conclusion as to the validity of the statute. However, for the purposes of determining the validity of the 1956 statute now in issue it is not necessary to reconsider the soundness of the Whittenberg and Keaney decisions.

If constitutional distinctions between cities and counties and constitutional limitations upon their respective taxing powers are to have any meaning, it would seem that some restrictions must be placed on the use by one such local governmental unit of its taxing powers to supplement the financial resources of another such unit. The mere fact that the existence of a large city within a county may increase the burden of the county's functions does not furnish justification for enlarging the county's taxing powers through the device of requiring the city to contribute some of its tax money. If the city is to contribute its money, the function must in some way be identified as a city function.

■ The coroner by constitutional designation is a county officer. The services he performs have historically and traditionally been performed by such an officer. It may be that a city could be required to furnish services of the same kind, and thus relieve the coroner of some of his burden, but no such requirement has as yet been imposed on Kentucky cities. The 1956 Act here in question simply compels certain cities to give financial support to the county office, without that office's serving any public purpose of the city.

It is our opinion that the provision of the 1956 Act requiring certain cities to contribute to the salary of the coroner is unconstitutional. Likewise, the provision authorizing any city to provide compensation for one or more deputy coroners.

We are required to determine whether the partial unconstitutionality invalidates the entire Act. Under KRS 446.090, the remaining parts must be held valid unless they are "so essentially and inseparably connected with and dependent upon the unconstitutional part that it is apparent that the General Assembly would not have enacted the remaining parts without the unconstitutional part, or unless the remaining parts, standing alone, are incomplete and incapable of being executed in accordance with the intent of the General Assembly."

■ The 1956 Act repealed a former statute prescribing inquest *fees* for coroners and authorizing counties to pay salaries in addition to the fees, and established a schedule of minimum salaries to be paid by counties, graduated according to population, with authority in the counties to pay salaries above the minimums. Applying the second clause of KRS 446.090, it is obvious that the parts of the Act providing for county salaries are complete and capable of standing alone. Applying the first clause, we do not find any basis for saying that these parts are so essentially and inseparably connected with and dependent upon the unconstitutional part as to make

it apparent that the General Assembly would not have enacted them without the unconstitutional part. With the unconstitutional part deleted, the Act lacks no essential in furnishing the basis for the payment of full and adequate compensation to coroners. There is nothing to force the conclusion that the General Assembly would not have taken the coroners off the fee basis and put them on a salary basis without the requirement that two or three cities pay a supplemental salary. Accordingly, it is our opinion that the remaining parts of the Act are valid.

The judgment is reversed, with directions to enter judgment in conformity with this opinion.